BOTSFORD CONTINUING CARE CORPORATION v
INTELISTAF HEALTHCARE, INC

Docket No. 294780. Submitted February 1, 2011, at Detroit. Decided
March 22, 2011, at 9:05 a.m.

Botsford Continuing Care Corporation brought an indemnification suit
in the Oakland Circuit Court against Intelistaf Healthcare, Inc.,
doing business as StarMed Staffing Group. Plaintiff alleged claims of
common-law indemnification, contractual indemnification, implied
contractual indemnification, and contribution after having lost a
medical-malpractice suit against it where active negligence had been
alleged against both Botsford employees and StarMed employees.
The jury verdict form in that underlying suit had not required the
jury to differentiate between the employees, and it gave no indication
whether the jury would have found Botsford actively negligent.
Plaintiff moved for partial summary disposition on its claim for
common-law indemnification, asserting that the jury had only found
it passively negligent. Defendant moved for summary disposition,
arguing that indemnification was improper because plaintiff's liabil-
ity was not solely passive or vicarious. The court, Colleen A. O'Brien,
J., agreed with plaintiff, denied defendant's motion, and entered
judgment in plaintiff's favor for the full amount of the underlying
action. Defendant appealed.

The Court of Appeals *held*:

A party seeking indemnity must plead and prove freedom from
personal fault in the underlying action. The court must consider
whether the complaint in the underlying action contains allegations
of active negligence by the party seeking indemnity and, if the case
was tried by a jury, whether issues of active negligence were submit-
ted to and decided by the jury. The complaint in the underlying
medical-malpractice action included allegations that plaintiff's own
employees were actively negligent, and claims of plaintiff's active
negligence were submitted to the jury. Because the verdict form did
not require the jury to specify which employees were negligent, the
jury could have concluded that plaintiff's liability was not merely
passive or vicarious. The trial court erred by ruling as a matter of law
that the jury found plaintiff had been only passively negligent.

Affirmed in part, reversed in part, and remanded.

INDEMNITY — COMMON-LAW INDEMNIFICATION — NEGLIGENCE — VICARIOUS LIABILITY.

> A party seeking indemnity must plead and prove freedom from personal fault in the underlying action; that is, the party must only have been vicariously liable; the court must consider whether the complaint in the underlying action contains allegations of active negligence by the party seeking indemnity and, if the case was tried by a jury, whether issues of active negligence were submitted to and decided by the jury.

*Tanoury, Nauts, McKinney & Garbarino, P.L.L.C.* (by *Linda M. Garbarino* and *David R. Nauts*), for plaintiff.

*Collins, Einhorn, Farrell & Ulanoff, P.C.* (by *Deborah A. Hebert*), for defendant.

Before: BORRELLO, P.J., and JANSEN and FORT HOOD, JJ.

JANSEN, J. In this common-law indemnification action,[1] defendant, Intelistaf Healthcare, Inc., formerly doing business as StarMed Staffing Group (StarMed), appeals the circuit court's order denying its motion for summary disposition and granting partial summary disposition in favor of plaintiff, Botsford Continuing Care Corporation (Botsford). The circuit court ruled that Botsford was entitled to full common-law indemnification from StarMed as a matter of law. For the reasons that follow, we affirm the circuit court's denial

---

[1] Plaintiff, Botsford Continuing Care Corporation, also raised claims of contractual indemnification, implied contractual indemnification, and contribution in its complaint. "While the right [to indemnification] frequently arises out of an express contract to indemnify, it can also be based on an implied contract or be imposed by law." *Langley v Harris Corp*, 413 Mich 592, 596-597; 321 NW2d 662 (1982). "Indemnity should be distinguished from contribution. Contribution distributes a loss among joint tortfeasors, requiring each to pay its proportionate share; indemnity shifts the entire loss from the party who has been forced to pay to the party who should properly bear the burden." *Id.* at 597.

of StarMed's motion for summary disposition, but reverse the circuit court's grant of partial summary disposition in favor of Botsford and remand for further proceedings consistent with this opinion.

I

A

In August 2000, Virginia Harris, age 74, had routine bladder suspension surgery at Henry Ford Hospital. Unknown to Harris at the time, the surgeon nicked her bowel during the procedure, and Harris's bowel later became infected. This necessitated further bowel surgery, including a temporary colostomy. Thereafter, Harris's doctors discovered that although the surgeons had successfully removed the infected tissue from her bowel, the infection had spread to her back. Harris consequently returned for yet another surgery, this time to remove infected bone and tissue from her back, all of which had resulted from the initial bladder suspension procedure. On February 16, 2001, following her back surgery, Harris was admitted to a nursing home owned by Botsford. The plan was for Harris to recuperate at the facility while awaiting a colostomy-reversal surgery scheduled for March 12, 2001.

On the morning of March 11, 2001, while a patient at the Botsford facility, Harris was placed on a bowel preparation regimen to prepare her for the upcoming colostomy-reversal surgery. As a result of the bowel preparation regimen, Harris's colostomy bag needed to be emptied several times during the day on March 11, 2001.

At some point on March 11, 2001, Harris told her son, Robert Harris, that she needed to empty her colostomy bag. Robert Harris went to the nursing station just

outside his mother's room and asked for assistance taking his mother to the bathroom. According to Robert Harris, the nurses at the nursing station told him to take his mother to the bathroom by himself. Robert Harris apparently felt uncomfortable taking his mother to the bathroom and emptying her bag himself, but did so anyway. After helping to empty his mother's colostomy bag, Robert Harris returned his mother to her bed. Thereafter, he apparently left the Botsford facility for the day.

Harris's longtime companion, Robert Hayes, age 81, arrived at the Botsford facility and stayed with Harris during the afternoon of March 11, 2001. At some point that afternoon, Harris again needed to empty her colostomy bag. She pressed her call button but no one came to her room to help. Thus, Hayes went to the nursing station outside Harris's room and asked for assistance. According to Hayes, the two nurses working at the station (later discovered to be Joan Lay and Kathleen Holmes) instructed him that he should help Harris to the bathroom and assist her with emptying the bag himself, just as they had allegedly instructed Harris's son to do earlier in the day. In contrast, nurses Lay and Holmes testified that they informed Hayes to press the call button again and that a nurse's aide would respond to the call. At any rate, it is undisputed that Hayes returned to the room and helped Harris out of bed by himself. While Hayes was helping Harris to the bathroom, Harris fell and fractured her left hip. As a result of the fall, Harris ultimately had to undergo partial left hip replacement surgery.

There were both licensed practical nurses (LPNs) and nurse's aides working at the Botsford facility during February and March 2001. The LPNs were not employed by Botsford, but were contract nurses em-

ployed by StarMed, a staffing agency. By contrast, the nurse's aides were direct employees of Botsford. It is beyond dispute that the nurses working at the nursing station outside Harris's room on March 11, 2001, were LPNs Joan Lay and Kathleen Holmes.

In August 2003, Harris sued Botsford. Her complaint alleged that the nursing home personnel had been negligent on March 11, 2001, by telling Hayes that he should help Harris to the bathroom and by failing to actively respond when Hayes requested assistance. The complaint also alleged that the personnel had been negligent by failing to better monitor and observe Harris's colostomy bag during the day of March 11, 2001, by failing to help Harris to the bathroom to empty her bag more often during the day of March 11, 2001, by failing to directly supervise the emptying of Harris's colostomy bag, by delegating to Hayes the duties of helping Harris to the bathroom and emptying the colostomy bag, and by failing to complete an accurate and adequate "Fall Risk Assessment" at the time Harris was first admitted to the Botsford facility in February 2001.

Although the complaint did not distinguish between the LPNs and nurse's aides working at the Botsford facility, it later became clear during discovery that although certain of Harris's allegations of negligence pertained to the nurse's aides, other allegations in the complaint pertained to the LPNs.[2] Importantly, it was learned that the duties of monitoring and observing Harris's colostomy bag and helping Harris to the bathroom to empty the bag were duties of the Botsford-employed nurse's aides. It was also learned that LPNs Lay and Holmes were StarMed employees. Finally, it

---

[2] The affidavit of merit accompanying Harris's complaint was similarly critical of the LPNs as well as the nurse's aides.

was discovered that the preparation of Harris's Fall Risk Assessment had been a responsibility of a direct employee of Botsford.

Prior to trial, Botsford filed a third-party complaint against StarMed, contending that StarMed's employees, Lay and Holmes, were actually liable for most or all of the negligence alleged by Harris. However, Botsford's third-party complaint was voluntarily dismissed without prejudice by stipulation of the parties. The parties agreed that Botsford would be permitted to re-file its claims against StarMed in a separate action should Harris prevail on the merits of her lawsuit against Botsford.

Botsford then moved for partial summary disposition, seeking the dismissal of all claims except those that directly implicated LPNs Lay and Holmes. Botsford argued that the only claims actually set forth in the notice of intent had related to the actions of Lay and Holmes on March 11, 2001, at which time the two nurses allegedly told Hayes to help Harris to the bathroom by himself. Harris opposed the motion, contending that her notice of intent and other pleadings had specifically set forth other claims as well, and that her allegations of negligence were not limited to the actions of Lay and Holmes on March 11, 2001. In her response to Botsford's motion, Harris argued that Botsford was "attempting to eliminate any claims of negligence involving its own employees (including primarily nurse's aides) so that it can perfect its third-party case against StarMed." The circuit court agreed with Harris and denied Botsford's motion, ruling that the motion "lack[ed] legal and factual merit." Consequently, the matter proceeded to trial not only with respect to the claims against StarMed employees Lay and Holmes but also with respect to certain claims against Botsford's own nurse's aides.

During her opening statement at trial, Harris's attorney focused primarily on the actions of Lay and Holmes on March 11, 2001. However, Harris's attorney also addressed the actions of certain nurse's aides who allegedly failed to properly monitor and empty Harris's colostomy bag during her stay at the Botsford facility. In addition, counsel addressed the allegedly negligent preparation of the Fall Risk Assessment that was completed when Harris was admitted to the Botsford facility in February 2001.

On the third day of trial, the circuit court granted Botsford's motion for a directed verdict with respect to Harris's claim of negligent preparation of the Fall Risk Assessment. Thereafter, counsel for Harris and counsel for Botsford agreed on the record that "the only allegation that's left on the table is the conduct on March 11 . . . of the nurses and personnel." The circuit court responded, "Okay."

At the end of trial, when the attorneys were discussing the proposed jury instructions with the circuit court, counsel for both parties agreed that there were not only nurses at issue in the case but also nurse's aides. Counsel stipulated on the record that only one "professional negligence" instruction would be provided to the jury, and that this same instruction would apply to both the nurses and the nurse's aides at issue in the case.

The jury was provided a general verdict form that asked whether Botsford was "professionally negligent in one or more ways claimed by plaintiff," whether "Virginia Harris sustain[ed] injury or damage," and whether Botsford's "professional negligence [was] a proximate cause of the injury or damage to Virginia Harris." The jury answered "yes" to all three questions without ever being asked to differentiate between the

actions of the LPNs and those of the nurse's aides. The jury assessed damages in the amount of $205,000, including $155,000 for noneconomic damages that Harris had already sustained and $50,000 for future noneconomic damages.

Following the jury's verdict, the circuit court entered judgment in favor of Harris, which included the award of certain fees, costs, and case evaluation sanctions. Botsford appealed by right, but the portions of the judgment relevant to the instant case were affirmed on appeal. *Harris v Botsford Continuing Care Corp*, unpublished opinion per curiam of the Court of Appeals, issued June 26, 2007 (Docket Nos. 267997 and 269452).[3] Our Supreme Court denied leave to appeal. *Harris v Botsford Continuing Care Corp*, 480 Mich 953 (2007). Thereafter, Botsford satisfied the judgment.

B

On June 4, 2008, Botsford filed the instant action against StarMed to recover the money that it paid to satisfy the underlying medical malpractice judgment. Botsford asserted claims of common-law indemnification, contractual indemnification, implied contractual indemnification, and contribution. Botsford also sought from StarMed an additional $123,285.00 in defense costs incurred in the underlying action. The present action was assigned to the same circuit court judge who had presided over the underlying medical malpractice trial.

On March 11, 2009, Botsford filed a motion for partial summary disposition, requesting judgment on

---

[3] This Court did reverse the award of certain fees, costs, and case evaluation sanctions, but affirmed the jury's overall verdict and assessment of damages.

its claim of common-law indemnification only. Botsford argued that the only claims actually tried before the jury in the underlying action had related to the StarMed employees, Lay and Holmes, and that the jury's verdict therefore must have been based solely on Botsford's passive or vicarious negligence. Botsford asserted that because the jury had found it to be passively negligent rather than actively negligent, it was entitled to common-law indemnification from StarMed in the full amount of the underlying judgment.

StarMed filed its own motion for summary disposition on May 11, 2009. Among other things, StarMed argued that Botsford was not entitled to common-law indemnification because Botsford had not been free from active fault and its liability was not solely passive or vicarious in nature. StarMed asserted that, in addition to claims concerning the negligence of nurses Lay and Holmes, the jury had considered claims of active negligence against Botsford and its own employees. StarMed maintained that because Harris had asserted claims of active negligence against Botsford itself, and because the jury had considered these claims, Botsford was not entitled to common-law indemnification.[4]

The circuit court observed from the bench that there was no genuine issue of material fact concerning the nature of the claims that had been considered by the jury in the underlying medical malpractice case and that Botsford was entitled to common-law indemnification from StarMed as a matter of law. The court noted that common-law indemnification is "available only if the party seeking it is not actively negligent," and that

---

[4] StarMed also argued in its motion for summary disposition that Botsford's claims of contractual indemnification, implied contractual indemnification, and contribution should be dismissed.

the party seeking common-law indemnification "must plead and prove freedom from personal fault." The court went on to observe:

> [T]here's no genuine issue of material fact that Botsford was liable to Harris in the underlying case on passive negligence [only]. In other words, vicarious liability only for the actions of . . . StarMed's employed licensed practical nurses, Holmes and Lay.

The circuit court remarked that "the jury found professional negligence" and that "[t]he only licensed professionals whose care was at issue were nurses Holmes and Lay." The court also remarked that "[t]he only nurses attending Ms. Harris on March 11, 2001, were the employees of [StarMed], specifically nurses Holmes and Lay."

Accordingly, on October 8, 2009, the circuit court issued an order denying StarMed's motion for summary disposition, granting Botsford's motion for partial summary disposition, and entering judgment in favor of Botsford in the amount of $344,436.00—the full amount of the underlying medical malpractice judgment.[5] The order of October 8, 2009, provided that "[t]his Judgment disposes of the last pending claims in this matter and closes the case." StarMed moved for reconsideration, but the motion was denied. StarMed has timely appealed.

II

We review de novo the circuit court's decision to grant or deny a motion for summary disposition. *Spiek v Dep't of Transp*, 456 Mich 331, 337; 572 NW2d 201 (1998). Whether a party was free from active negligence

---

[5] With interest, the circuit court calculated that StarMed owed Botsford a total of $367,951.07.

in an underlying case and thus entitled to common-law indemnification is generally a question of fact for the jury. See *Warren v McLouth Steel Corp*, 111 Mich App 496, 505; 314 NW2d 666 (1981). Such questions may be decided on summary disposition as a matter of law only when reasonable minds could not disagree. See *Babula v Robertson*, 212 Mich App 45, 54; 536 NW2d 834 (1995); see also *West v Gen Motors Corp*, 469 Mich 177, 183; 665 NW2d 468 (2003). When there remains a genuine issue of fact as to whether the party seeking common-law indemnification was actively or passively negligent in the underlying case, summary disposition of the common-law indemnification claim is improper. *Peeples v Detroit*, 99 Mich App 285, 294; 297 NW2d 839 (1980).

III

As an initial matter, we note that the circuit court erred to the extent that it stated in its order of October 8, 2009, that "[t]his Judgment disposes of the last pending claims in this matter and closes the case." By way of the order of October 8, 2009, the circuit court clearly granted summary disposition in favor of Botsford with respect to its claim of common-law indemnification *only*, and just as clearly denied StarMed's motion for summary disposition in full. In other words, the order of October 8, 2009, left intact Botsford's remaining claims of contractual indemnification, implied contractual indemnification, and contribution and was *not* a final order. Thus, the circuit court's order of October 8, 2009, was not appealable to this Court as a matter of right. MCR 7.202(6)(a)(i); MCR 7.203(A)(1). Nevertheless, for the sake of judicial economy, we exercise our discretion to treat StarMed's claim of appeal as a granted application for leave to appeal. See

*In re Investigative Subpoena*, 258 Mich App 507, 508 n 2; 671 NW2d 570 (2003); *Waatti & Sons Electric Co v Dehko*, 230 Mich App 582, 585; 584 NW2d 372 (1998).

IV

Contrary to the ruling of the circuit court, we conclude that there remained genuine issues of material fact with respect to what claims were actually considered and decided by the jury in the underlying medical malpractice action and whether the jury found Botsford to be actively negligent or passively negligent only. Accordingly, while we affirm the circuit court's denial of StarMed's motion for summary disposition, we reverse the circuit court's grant of partial summary disposition in favor of Botsford and remand for further proceedings.

"[T]he right to common-law indemnification is based on the equitable theory that where the wrongful act of one party results in another party's being held liable, the latter party is entitled to restitution for any losses." *Lakeside Oakland Dev, LC v H & J Beef Co*, 249 Mich App 517, 531; 644 NW2d 765 (2002). The right " 'exists independently of statute, and whether or not contractual relations exist between the parties, and whether or not the negligent person owed the other a special or particular legal duty not to be negligent.' " *Dale v Whiteman*, 388 Mich 698, 705-706; 202 NW2d 797 (1972) (citation omitted). "Common-law indemnity is intended only to make whole again a party held vicariously liable to another through no fault of his own. This has been referred to as 'passive' rather than 'causal' or 'active' negligence." *Peeples*, 99 Mich App at 292. "It has long been held in Michigan that the party seeking indemnity must plead and prove freedom from personal fault. This has been frequently interpreted to mean

that the party seeking indemnity must be free from active or causal negligence." *Langley v Harris Corp*, 413 Mich 592, 597; 321 NW2d 662 (1982). Therefore, a common-law indemnification action "cannot lie where the plaintiff was even .01 percent actively at fault." *St Luke's Hospital v Giertz*, 458 Mich 448, 456; 581 NW2d 665 (1998); see also *Paul v Bogle*, 193 Mich App 479, 491; 484 NW2d 728 (1992) (observing that "common-law indemnity . . . require[s] that the person seeking indemnification be free from any active negligence").

In general, "[w]hether a party is 'passively' (vicariously) liable or 'actively' liable for purposes of determining the availability of common-law indemnity is to be determined from the primary plaintiff's complaint." *Parliament Constr Co v Beer Precast Concrete Ltd*, 114 Mich App 607, 612; 319 NW2d 374 (1982). If the primary plaintiff's complaint contained any allegations of active negligence, rather than merely allegations of passive negligence, common-law indemnification is not available. *Oberle v Hawthorne Metal Prod Co*, 192 Mich App 265, 270; 480 NW2d 330 (1991); see also *Williams v Litton Systems, Inc*, 164 Mich App 195, 199; 416 NW2d 704 (1987), aff'd 433 Mich 755 (1989). However, when the underlying action has been tried to a jury, as in the present case, the nature of the claims must be determined by examining not only the primary plaintiff's complaint, but also the issues actually submitted to and decided by the jury. See *Hartman v Century Truss Co*, 132 Mich App 661, 665; 347 NW2d 777 (1984); see also *Parliament Construction*, 114 Mich App at 613.

Virginia Harris's complaint in the underlying medical malpractice action contained allegations of both active and passive negligence against Botsford. The primary complaint alleged that Lay and Holmes, both

StarMed employees, had been negligent on March 11, 2001, by instructing Hayes to help Harris to the bathroom and by failing to actively respond when Hayes requested their assistance. Because Lay and Holmes were StarMed employees, Harris's claims concerning their actions were clearly claims of passive negligence only. However, the primary complaint also alleged that Botsford's staff had been negligent by failing to better monitor and observe Harris's colostomy bag during the day of March 11, 2001, by failing to help Harris to the bathroom to empty the bag more often, by failing to directly supervise the emptying of Harris's colostomy bag, by delegating to Hayes the duty of helping Harris to the bathroom, and by failing to complete an accurate and adequate Fall Risk Assessment at the time Harris was first admitted to the facility. It is undisputed that certain of the duties implicated in these additional allegations of negligence were the duties of Botsford's own nurse's aides. Accordingly, it is clear that Harris's complaint contained at least some allegations of active negligence by Botsford as well.

Moreover, it is manifest that certain of these claims of active negligence were presented to the jury. We acknowledge that because the jury returned a general verdict, it is impossible to determine from the face of the verdict form alone whether the jury actually found any active negligence by Botsford and its direct employees. Indeed, the jury never differentiated between the actions of the LPNs and the actions of the nurse's aides. However, this does not negate the fact that the jury heard and was free to consider certain claims of active negligence by Botsford and its employees. As noted previously, the circuit court denied Botsford's pretrial motion for partial summary disposition, which had sought the dismissal of all claims except those directly implicating Lay and Holmes. The effect of this ruling

was to allow all claims—including Harris's claims of active liability against Botsford's direct employees—to go to the jury. And while it is true that any claims related to the preparation of the Fall Risk Assessment were dismissed when the circuit court granted a directed verdict on this issue, counsel for both parties stipulated on the record on the final day of trial that there were not only LPNs at issue in the case but also nurse's aides. As explained earlier, the attorneys agreed that only one "professional negligence" instruction would be provided to the jury and that this instruction would apply to the alleged negligence of both the StarMed LPNs and the Botsford nurse's aides. Parties are bound by their agreements concerning the manner in which claims are submitted to the jury, and "issues that are tried by express or implied consent of the parties, even though they are not raised in the pleadings, are treated as if they had been raised in the pleadings." *Symons v Prodinger*, 484 Mich 851 (2009); see also MCL 2.118(C)(1). The circuit court erred by ruling as a matter of law that the jury in the underlying medical malpractice case did not consider or decide any claims of active negligence against Botsford and that the jury found Botsford to be passively negligent only.

As we have already stated, it is impossible to determine from the face of the verdict form alone whether the jury actually found any active negligence on the part of Botsford or its direct employees in the underlying case. But there certainly remained genuine issues of material fact with respect to this question. In light of the evidence presented in this case, reasonable minds surely could have differed as to whether the jury in the underlying medical malpractice action considered and decided any claims of active negligence and whether the jury found any active negligence by Botsford or its direct employees. See *West*, 469 Mich at 183. Accord-

ingly, the circuit court erred by granting summary disposition in favor of Botsford with respect to its common-law indemnification claim. See *Peeples*, 99 Mich App at 294. We reverse the circuit court's ruling on this issue and remand for further proceedings. On remand, it will be necessary for the trier of fact to determine whether the jury in the underlying medical malpractice case considered and decided any claims of active negligence and whether the underlying jury's verdict was based in any part on the active negligence of Botsford or Botsford's own employees.

V

StarMed also argues that we should direct the circuit court to enter judgment in its favor on Botsford's claims of contractual indemnification and implied contractual indemnification, both of which StarMed insists are without merit.[6] This argument is not properly before us on appeal because it was not included in StarMed's statement of the questions presented. MCR 7.212(C)(5); *Caldwell v Chapman*, 240 Mich App 124, 132; 610 NW2d 264 (2000). In any event, however, we note that the circuit court denied StarMed's motion for summary disposition and did not decide these remaining claims. Consequently, Botsford's claims of contractual indemnification, implied contractual indemnification, and contribution remain pending and intact, and the circuit court will be required to consider them on remand.

VI

We affirm the circuit court's denial of StarMed's motion for summary disposition, but reverse the circuit

---

[6] On the other hand, StarMed concedes in its brief on appeal that Botsford's contribution claim should be allowed to go forward on remand.

court's grant of summary disposition in favor of Botsford with respect to its claim of common-law indemnification and remand for further proceedings consistent with this opinion. On remand, the circuit court shall also consider Botsford's remaining claims of contractual indemnification, implied contractual indemnification, and contribution.

Affirmed in part, reversed in part, and remanded for further proceedings consistent with this opinion. We do not retain jurisdiction. No costs pursuant to MCR 7.219, neither party having prevailed in full.

BORRELLO, P.J., and FORT HOOD, J., concurred with JANSEN, J.