*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

JOHNNA JENKINS, as Personal Representative
of the ESTATE OF JAMES JENKINS,

UNPUBLISHED
January 12, 2023

Plaintiff-Appellant,

v

DARQUOISE MCCARVER and
MICHIGAN ASSIGNED CLAIMS PLAN,

No. 359051
Wayne Circuit Court
LC No. 20-003249-NI

Defendants,

and

FARMERS INSURANCE EXCHANGE,

Defendant-Appellee.

Before: CAVANAGH, P.J., and O'BRIEN and RICK, JJ.

PER CURIAM.

In this dispute over entitlement to first-party no-fault insurance (PIP) benefits, plaintiff, Johnna Jenkins, as personal representative for the estate of James Jenkins,[1] appeals as of right the trial court's order granting summary disposition in favor of defendant, Farmers Insurance Exchange.[2]  While riding an uninsured motorcycle, James was injured in a crash with an uninsured

---

[1] The original plaintiff in this suit was James.  While this lawsuit was pending, James died, and his mother, Johnna, was appointed personal representative of his estate and substituted as plaintiff. To avoid confusion, this opinion will use "James" and "Johnna" when discussing factual issues. The opinion uses "plaintiff" only when necessary to discuss legal issues, such as identifying the nonmoving party in context of the pertinent motion for summary disposition.

[2] The complaint also named Darquoise McCarver (the driver of the motor vehicle involved in the at-issue accident) and the Michigan Assigned Claims Plan (MACP) as defendants.  McCarver has

-1-

motor vehicle.[3] The motorcycle was titled to James' mother, Johnna. At issue is whether the trial court correctly held that there was no material question of fact that James was a constructive "owner" of the motorcycle under the no-fault act, MCL 500.3101 *et seq*., such that Farmers was not required to provide James with PIP benefits. We conclude that, when the facts are viewed in the light most favorable to plaintiff as the nonmoving party, a reasonable factfinder could conclude that James was not a constructive owner of the motorcycle. Accordingly, we reverse the trial court's order granting Farmers' motion for summary disposition and remand for further proceedings.[4]

## I. BACKGROUND

James was riding an uninsured motorcycle on September 16, 2019, in Detroit when he collided with a car that ran a stop sign. The car's driver was uninsured. James was not wearing a helmet, and suffered injuries to his face, arm, and leg, and was taken to the hospital.

Johnna bought the motorcycle in 2019 because she had socialized with various motorcycle clubs, and wanted to learn to ride a motorcycle and join a club. She ended up doing neither, however, so she never rode the motorcycle. James, on the other hand, was already part of a motorcycle club, and, after Johnna purchased the motorcycle, James used it to participate in activities with his club. James used the motorcycle several times a week, and even took it on an out-of-state trip once with his motorcycle club. Johnna paid for the motorcycle herself, and also paid for all the upkeep of the motorcycle, except that James refilled the motorcycle with gas after he used it. Both Johnna and James testified that James always had to ask permission to use the motorcycle. Even if Johnna was at work, James would call her and ask permission before using the motorcycle. Johnna testified that sometimes she denied James permission to use the motorcycle, and that he would not take the motorcycle if she said "no." Johnna conceded, however, that it was possible that James used the motorcycle without her permission because she was not always at home. James did not have his own set of keys for the motorcycle, and the motorcycle's key was always kept at Johnna's house, as was the motorcycle itself.

After the accident involving the motorcycle, James sought PIP benefits through the Michigan Assigned Claims Plan (MACP), and Farmers was eventually assigned as his insurer. In the trial court, Farmers moved for summary disposition on James' request for benefits. Farmers contended that, based on James' unfettered use of the motorcycle, there was no question of fact

---

never appeared in this action, and the MACP was dismissed after Farmers was assigned as plaintiff's insurer through the MACP.

[3] As stated previously, James died while this lawsuit was pending, but it does not appear that his death was connected with the accident in this case.

[4] Farmers raises a challenge to this Court's jurisdiction, contending that the order appealed is not a final order because plaintiff's complaint against McCarver was never resolved. To any extent that the order appealed from may not be a "final order" appealable as of right, see MCR 7.203(A)(1); MCR 7.202(6)(a)(*i*), we exercise our discretion to treat this appeal as on leave granted, see, e.g., *Botsford Continuing Care Corp v Intelistaf Healthcare, Inc*, 292 Mich App 51, 61; 807 NW2d 354 (2011).

that he was a constructive owner of the motorcycle. Farmers concluded that, because the motorcycle involved in the crash did not have insurance as required by MCL 500.3103, Farmers did not have to pay benefits to James, an alleged owner of that motorcycle, pursuant to MCL 500.3113. Plaintiff responded by arguing that the evidence established at least a question of fact whether James was a constructive owner of the motorcycle involved in the crash. After a hearing on Farmers' motion, the trial court concluded "that there is no genuine issue of material fact that James was the constructive owner of this motorcycle," and was therefore not entitled to benefits. This appeal followed.

## II. STANDARD OF REVIEW

A trial court's decision on a motion for summary disposition is reviewed de novo. *Corley v Detroit Bd of Ed*, 470 Mich 274, 277-278; 681 NW2d 342 (2004). Farmers moved for summary disposition under MCR 2.116(C)(10). In *Maiden v Rozwood*, 461 Mich 109, 120; 597 NW2d 817 (1999), our Supreme Court explained the process for reviewing a motion filed under MCR 2.116(C)(10):

> A motion under MCR 2.116(C)(10) tests the factual sufficiency of the complaint. In evaluating a motion for summary disposition brought under this subsection, a trial court considers affidavits, pleadings, depositions, admissions, and other evidence submitted by the parties, MCR 2.116(G)(5), in the light most favorable to the party opposing the motion. Where the proffered evidence fails to establish a genuine issue regarding any material fact, the moving party is entitled to judgment as a matter of law.

A genuine issue of material fact exists when, after viewing the evidence in a light most favorable to the nonmoving party, reasonable minds could differ on the issue. *Allison v AEW Capital Mgt, LLP*, 481 Mich 419, 425; 751 NW2d 8 (2008).

## III. ANALYSIS

Under MCL 500.3103, an owner or registrant of a motorcycle must procure certain insurance for the motorcycle. If the motorcycle does not have this insurance, and an owner or registrant of the motorcycle is injured in a crash involving the uninsured motorcycle, then the owner or registrant is not entitled to PIP benefits from any source. MCL 500.3113(b). It is undisputed that the motorcycle involved in this case did not have the required insurance, and that James was not a registrant of the motorcycle. The question on appeal is whether James was nevertheless a constructive "owner" of the motorcycle.

The answer to this question is governed by MCL 500.3101(3)(*l*)(*ii*), which defines "owner" under the no-fault act to include:

> A person renting a motorcycle or having the use of a motorcycle under a lease for a period that is greater than 30 days, or otherwise for a period that is greater than 30 consecutive days. A person who borrows a motorcycle for a period that is less than 30 consecutive days with the consent of the owner is not an owner under this subparagraph.

The parties agree that the only issue is whether James fits this definition of "owner" by "having the use of [the] motorcycle" as that phrase is used in MCL 500.3101(3)(*l*)(*ii*).[5]

While there is little caselaw defining what "having the use of" a motorcycle under MCL 500.3101(3)(*l*)(*ii*) means, there is ample caselaw interpreting what "having the use of" a motor vehicle under MCL 500.3101(3)(*l*)(*i*) means. We agree with the parties that, because both subsections use the same phrase to define the same thing—an "owner"—the meaning of "having the use of" to define "owner" in MCL 500.3101(3)(*l*)(*ii*) has the same meaning as when it is used to define "owner" in MCL 500.3101(3)(*l*)(*i*).

In *Ardt v Titan Ins Co*, 233 Mich App 685, 690; 593 NW2d 215 (1999), this Court held "that 'having the use' of a motor vehicle for purposes of defining 'owner' means using the vehicle in ways that comport with concepts of ownership." (Citation omitted.) The Court expounded that "ownership follows from proprietary or possessory usage, as opposed to merely incidental usage under the direction or with the permission of another." *Id*. at 691 (emphasis omitted).

With this understanding of "owner," we conclude that the trial court erred by concluding that, as a matter of law, James was an "owner" of the motorcycle. Viewing the evidence in the light most favorable to plaintiff, James had to ask permission every time he used the motorcycle (and this permission was sometimes denied), he did not help purchase the motorcycle, he never paid for the motorcycle's upkeep other than replacing gas, he did not have his own set of keys to the motorcycle, the keys were stored at Johnna's house, and the motorcycle itself was generally if not always stored at Johnna's home. This evidence, particularly the fact that James had to ask permission to use the motorcycle, was sufficient to create a question of fact whether James was indeed a constructive owner of the motorcycle under MCL 500.3101(3)(*l*)(*ii*). See *Ardt*, 233 Mich App at 691 (explaining that "ownership" does not generally include usage "with the permission of another").

We agree with plaintiff that the facts of this case are rather similar to those in *Detroit Med Ctr v Titan Ins Co*, 284 Mich App 490; 775 NW2d 151 (2009). There, Maria Jimenez was injured in an automobile accident, and the trial court concluded that there was no question of fact that she was not an "owner" under MCL 500.3101(3)(*l*)(*i*).[6] *Id*. at 491. This Court explained the facts as follows:

---

[5] Neither party argues that James did not fit this definition of "owner" because he did not have use of the motorcycle for "greater than 30 consecutive days." We acknowledge that the use of the word "consecutive" in this subsection makes it distinct from the subsection involving owners of motor vehicles. See MCL 500.3101(3)(*l*)(*i*) ("A person renting a motor vehicle or having the use of a motor vehicle, under a lease or otherwise, for a period that is greater than 30 days."). However, because the parties seemingly agree that James used the motorcycle for the requisite period of time, we offer no opinion about how MCL 500.3101(3)(*l*)(*ii*)'s use of the word "consecutive" makes it different from subsection (3)(*l*)(*i*).

[6] The subsection in which the definition of "owner" under the no-fault act is found has changed since *Detroit Med Ctr* was released, but the pertinent language remains the same.

-4-

Taking facts discerned from interviews of Jimenez and Jose Gonzalez in the light most favorable to defendant [as the nonmoving party], it was established that Gonzalez had title to the car and canceled the insurance; he was the father of Jimenez's two children and may have lived with her; the car was kept at Jimenez's residence; she used the vehicle, primarily for grocery shopping, approximately seven times over the course of about a month; she had to get permission and the keys from Gonzalez to use the vehicle, although permission may never have been denied; she fueled the car, but Gonzalez was otherwise responsible for maintenance; and he had stopped using the vehicle, as he had use of another. [*Id.* at 491-492.]

Here, similar to *Detroit Med Ctr*, the motorcycle was not titled to James, James had to get permission and the keys to use the motorcycle, and James fueled the motorcycle but Johnna was otherwise responsible for the motorcycle's maintenance. In one sense, there is an even stronger case here that James was not a constructive owner because, unlike in *Detroit Med Ctr* where the car was kept at Jiminez's residence, the motorcycle here was kept at Johnna's.[7] We agree with Farmers, however, to the extent that, unlike in *Detroit Med Ctr*, the evidence in this case establishes that James routinely used the motorcycle. Yet that distinction does not entitle Farmers to summary disposition, but rather is one of the reasons that we believe there is a question of fact whether James was a constructive owner of the motorcycle.

More generally arguing that the trial court reached the right result, Farmers points to evidence that it alleges conclusively establishes that James was an owner of the motorcycle, but that evidence only creates a question of fact on the ultimate issue. For instance, Farmers emphasizes that James regularly used the motorcycle, that he sometimes used it for activities not related to the motorcycle club, and that he was the *only one* who ever used the motorcycle because Johnna never learned how to ride it. Yet none of this evidence conclusively establishes that James was a constructive owner of the motorcycle, particularly given that he needed permission before he could use it, and that permission was sometimes denied.[8]

On whether James needed permission to use the motorcycle, Farmers disingenuously contends that "there definitively was not *always* a need to ask for permission." In support of this assertion, Farmers cites to Johnna's testimony in which she conceded that it was possible that James used the motorcycle without Johnna's knowledge while she was at work. However, the cited testimony most certainly does not establish that "there definitively was not *always* a need to ask for permission"—Johnna never conceded that there was even a single instance in which James did, in fact, use the motorcycle without permission. She conceded only that it was possible.

---

[7] Farmers contends that James conceded that he sometimes kept the motorcycle at his girlfriend's home, but in the portion of James' testimony to which Farmers cites, James said that he could not recall if he ever kept the motorcycle at his girlfriend's house and only conceded that it was "possible."

[8] Farmers complains that Johnna did not cite specific examples of when she denied James permission to use the motorcycle, but this complaint only goes to the weight of Johnna's testimony.

Regardless, even if Johnna testified that James sometimes used the motorcycle without permission, that would only create a question of fact on the issue because James never conceded that he used the motorcycle even a single time without Johnna's permission, despite being asked the question in various ways at least eight times during in his deposition.[9]

Farmers otherwise argues that there can be no question of fact that James was an owner of the motorcycle because it had a vanity plate with his motorcycle-club nickname on it, he "predominantly display[ed]" the motorcycle "on his social media profile," and he got a ticket while riding the motorcycle near his old job and girlfriend's house, which was out of the way from both his motorcycle club and Johnna's house. None of these facts, however, tend to conclusively establish that James was an owner of the motorcycle under MCL 500.3101(3)(*l*)(*ii*), though they certainly establish a question of fact on the issue.

## IV. CONCLUSION

In sum, Farmers has a strong case that James was a constructive owner of the motorcycle. However, when viewing the evidence in the light most favorable to plaintiff, we cannot agree that, as a matter of law, James was an owner of the motorcycle under MCL 500.3101(3)(*l*)(*ii*). Accordingly, the trial court's order granting defendant's motion for summary disposition is reversed.

Reversed and remanded. We do not retain jurisdiction.

/s/ Mark J. Cavanagh
/s/ Colleen A. O'Brien
/s/ Michelle M. Rick

---

[9] Similarly, Farmers' repeated assertion that James took the motorcycle on an out-of-state trip without Johnna's permission is a disputed question of fact. In support of its assertion, Farmers cites to Johnna's testimony that she was unaware of any out-of-state trip that James took with the motorcycle, and to James' testimony that he took the motorcycle on an out-of-state trip. Farmers ignores, however, that James testified that he took the motorcycle on the trip with Johnna's permission. Thus, contrary to Farmers' representations, this is at least a disputed question of fact.