*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

ANTISIA KING,

        Plaintiff-Appellant,

v

CITY OF DETROIT ELECTION COMMISSION
and JANICE M. WINFREY,

        Defendants-Appellees.

UNPUBLISHED
November 03, 2025
11:48 AM

No. 377920
Wayne Circuit Court
LC No. 25-015760-AW

Before: BOONSTRA, P.J., and M. J. KELLY and RICK, JJ.

PER CURIAM.

In this election matter, plaintiff, Antisia King, appeals as of right the trial court's October 17, 2025 order denying her motion seeking mandamus and declaratory relief. We affirm.

## I. FACTS

King seeks to represent Detroit's Fifth District on the City of Detroit's Board of Police Commissioners. On July 21, 2025, King filed a declaration of intent to seek this office as a write-in candidate. On this form, she listed her address as being at "7759 LaSalle" in Detroit. On September 8, 2025, via letter from the City of Detroit's Department of Elections (DOE), King was informed that she was ineligible to seek this office pursuant to Detroit City Charter §§ 2-101 and 3-111. Generally, the letter explained that one seeking elective office in Detroit must have been a resident and qualified voter in Detroit for at least one year prior to the date of filing for office. And, for the specific office at issue (a district office, as opposed to an at-large office), the candidate must have been a resident in the specific district for at least a year before filing. The letter explained that, "[b]ased on review of your voter registration records," King did not meet the residency requirement because she "moved to 7759 LaSalle on July 18, 2025" and filed her declaration of intent on July 21, 2025, three days later. The DOE wrote: "You were not a resident living in District 5 for one year prior to filing as a Write-In Candidate. As a result, you are disqualified from being a Write-In Candidate for the office of Police Commissioner in the 2025 Municipal General Election."

-1-

Via counsel, King responded on September 12, 2025. She asserted that, in fact, she resided at 7759 LaSalle Boulevard "since September 2024." King further asserted that her situation was similar to that in *Barrow v Detroit City Election Comm*, 301 Mich App 404; 836 NW2d 498 (2013). According to King's letter, the Court of Appeals in that case applied the one-year residency requirement to the question whether a candidate's name could appear on the ballot, but not to whether that same person could pursue a write-in campaign. King believed that the "same result should apply here: Ms. King's name should be ineligible to appear on the ballot, but she should be able to contest the election as a write-in candidate and to take office if she receives the most votes." King further asserted that in MCL 168.737a(4), the Legislature explained what information must be contained in a declaration of intent to run as a write-in candidate, and that King satisfied each of those requirements. King asserted that, to the "extent any section of the City Charter conflicts with MCL 168.737a, the [Charter] section is void."

The DOE responded via letter on September 17, 2025. The DOE again focused on the residency question, and asked that King provide information supporting her claims about when she began residing at the LaSalle address. It appears that King responded with several affidavits and a "roommate agreement." The affidavits generally claimed that King began living at that address in "July 2024." The "roommate agreement" bore a date of July 17, 2024. Per King's representations to this Court in her reply brief, this information was provided to the DOE "by September 24, 2025," but she received no response.

King then filed the instant lawsuit on October 8, 2025, followed soon thereafter by her motion seeking emergency relief in the form of a writ of mandamus or declaratory relief. In her motion, King argued that her eligibility is controlled by statute, and specifically, MCL 168.737a. To the extent the Charter conflicted with the statute, King maintained that the statute controlled. King further argued that, while her compliance with MCL 168.737a should "end the inquiry," she was, in fact, a resident in District 5 (at the LaSalle address) for a year before filing her declaration of intent, as shown by her affidavits and the roommate agreement.[1] King argued that she thus satisfied the one-year residency requirements of §§ 2-101 and 3-111 of the Charter. She also asserted that she satisfied § 7-802 of the Charter, which states that members of the Board of Police Commissioners must be residents of the City of Detroit.

Defendants filed a response on October 17, 2025. While defendants questioned whether King actually lived at the LaSalle address in July 2024, defendants now focused on when King registered to vote using that address. Defendants explained that under § 2-101 of the Charter, residency is one requirement, but another is that the candidate have been a registered voter in the district they seek to represent for at least one year at the time the individual files for office. King filed for office on July 21, 2025, but it was undisputed that she first registered to vote in District 5 on July 18, 2025. Indeed, by the filing deadline of October 24, 2025 at 4:00 p.m., it was impossible for King to satisfy this one-year requirement given when she registered to vote using the LaSalle

---

[1] King also stated that if there was any doubt as to the exact date on which she moved in, she could file another declaration of intent at any time before October 24, 2025, at 4:00 p.m., which is the deadline for filing such a declaration.

address. So, even assuming that King had lived at the LaSalle address as she claimed, King was ineligible to be elected to the office sought, given when she registered to vote.

The trial court heard arguments on October 17, 2025. At this hearing, King's counsel asserted that there were two issues to decide. First was whether MCL 168.737a prevailed over the Charter; second was whether the Charter actually has residency and voter registration requirements that apply to the Board of Police Commissioners. After hearing arguments, the court concluded that King "failed to demonstrate that the requirements for mandamus or declaratory relief have been met, and her motion must be denied." King's counsel stated he would submit an order. Later that day, the court entered an order denying King's motion; the order states that it is a final order closing the case. This appeal followed.

## II. JURISDICTION

We first discuss a jurisdictional problem with this claim of appeal that has not been raised by the parties. However, subject-matter jurisdiction is an issue of critical importance, and this Court is obligated to take notice when it lacks subject-matter jurisdiction, even if the parties do not raise the issue. *In re AMB*, 248 Mich App 144, 166-167; 640 NW2d 262 (2001).

This Court's jurisdiction is established by statute and court rule. *Chen v Wayne State Univ*, 384 Mich App 172, 191; 771 NW2d 820 (2009). Under MCR 7.203(A)(1), this Court has jurisdiction over a claim of appeal taken from a final order or final judgment of the circuit court. *Chen*, 284 Mich App at 192. In a civil case, MCR 7.202(6)(a) defines a "final judgment" or "final order" as "the first judgment or order that disposes of all the claims and adjudicates the rights and liabilities of all the parties . . . ." Also critical to the jurisdictional question in this case are several well-established legal principles. First, courts speak through their written orders and judgments, not oral pronouncements. *In re Contempt of Henry*, 282 Mich App 656, 678; 765 NW2d 44 (2009). Second, "[s]ubject-matter jurisdiction cannot be granted by implied or express stipulation of the litigants." *Harris v Vernier*, 242 Mich App 306, 316; 617 NW2d 764 (2000). And finally, that a trial court has designated its order as being a final order does not make it so. See, e.g., *Stumbo v Roe*, 332 Mich App 479, 482 n 1; 957 NW2d 830 (2020) ("The fact that the May 29, 2020 order contains language indicating that it 'is entered pursuant to MCR 2.602 and closes this case' does not control this Court's jurisdiction."); *Botsford Continuing Care Corp v Intelistaf Healthcare, Inc*, 292 Mich App 51, 61; 807 NW2d 354 (2011) (a trial court's order was not a final order appealable as of right, despite including language stating that it was a final order, when the order did not fully resolve all claims at issue in the case).

In this case, King filed a complaint, and also a motion seeking various forms of relief. The alleged final order in this case is captioned as one "denying plaintiff's emergency motion for immediate ex parte order to show cause, for mandamus relief, and for declaratory relief." The body of the order states that, upon consideration of the complaint, this motion, and defendants' response, as well as oral argument, "**IT IS ORDERED** that Plaintiff's Motion is DENIED for the reasons stated on the record." This is followed by the statement, "This is a final order [and] closes out the case." The trial court's register of actions indicates that the court has treated this as a final order closing the case.

But it is not. The trial court may have *intended* to dismiss the complaint, but that is not what the order states. By the terms of the written order, all that was adjudicated was King's motion. The "final order" language in the order also does not transform it into an order that actually resolves the complaint. In other words, while the trial court adjudicated King's motion, the complaint itself remains pending in the circuit court at this time, given the language of the challenged order. And that means that this order cannot be a "final order" or "final judgment." As a result, this Court lacks jurisdiction over the claim of appeal. MCR 7.203(A)(1); MCR 7.202(6)(a).

That said, and recognizing both the urgency of this case and the interests of judicial economy, "we exercise our discretion to treat" this appeal as "a granted application for leave to appeal." *Botsford Continuing Care Corp*, 292 Mich App at 61. We do caution the trial court and parties, however. It is clear that the order at issue was drafted and reviewed by the parties, as each signed it (via counsel) as having been approved as to form. Particularly given the urgency involved in election matters, the parties and trial court must be careful to ensure that, if the intention is to enter a final order, the written order actually resolves all claims of all parties in the action.

## III. MERITS

### A. STANDARD OF REVIEW

As it pertains to King's request for mandamus relief:

> A plaintiff has the burden of establishing entitlement to the extraordinary remedy of a writ of mandamus. The plaintiff must show that (1) the plaintiff has a clear legal right to the performance of the duty sought to be compelled, (2) the defendant has a clear legal duty to perform such act, (3) the act is ministerial in nature such that it involves no discretion or judgment, and (4) the plaintiff has no other adequate legal or equitable remedy. [*Barrow*, 301 Mich App at 411-412 (citations omitted).]

"[I]n a mandamus action this Court reviews de novo as questions of law whether a defendant has a clear legal duty to perform and whether a plaintiff has a clear legal right to performance." *Id*. 411.

With respect to the request for declaratory judgment:

> MCR 2.605(A)(1) provides: "In a case of actual controversy within its jurisdiction, a Michigan court of record may declare the rights and other legal relations of an interested party seeking a declaratory judgment, whether or not other relief is or could be sought or granted." An actual controversy exists when declaratory relief is needed to guide a plaintiff's future conduct in order to preserve the plaintiff's legal rights. [*Lansing Schools Ed Ass'n v Lansing Bd of Ed (On Remand)*, 293 Mich App 506, 515; 810 NW2d 95 (2011).]

"[Q]uestions of law relevant to a request for a declaratory judgment are reviewed de novo, while the decision whether to grant declaratory relief is reviewed for an abuse of discretion." *Davis v*

*Wayne Co Election Comm*, ___ Mich App ___, ___ NW3d ___ (Docket Nos. 368615 and 368328), slip op at 7.

To the extent this matter requires us to interpret any relevant statutes, "[q]uestions of statutory interpretation are questions of law that we review de novo on appeal." *Id*. at ___; slip op at 7-8. Similarly, "The interpretation of a city charter provision is a question of law." *Barrow*, 301 Mich App at 411. *Id*. When reviewing the Charter's provisions, this Court applies "the same rules that we apply to the construction of statutes." *Id*. at 413.

## B. ANALYSIS

We conclude in this case, like the trial court, that the Charter language controls and that a plain application of that language to the facts shows that King is simply not eligible to be elected to the office she seeks given when she registered to vote at the LaSalle address. Accordingly, she is not entitled to the relief sought.[2]

We begin with this Court's decision in *Barrow*. In that case, the candidate at issue, Michael Duggan, wished to run for Mayor of the City of Detroit. *Id*. at 407. The specific question in that case was whether Duggan could have his name appear on the primary ballot. *Id*. "The material facts are undisputed. Duggan, formerly of Livonia, moved to Detroit in March 2012. Duggan registered to vote in Detroit on April 12, 2012. Duggan filed his nominating petitions with the requisite number of signatures for the August mayoral primary on April 2, 2013." *Id*.

This Court explained the following about Detroit's City Charter:

> Michigan statutory law provides that a city's charter governs qualifications for persons running for office, MCL 168.321(1). As noted, the Detroit City Charter sets forth qualifications to be a candidate for elective office in § 2-101, which specifies that a "person seeking elective office must be a . . . registered voter of the City of Detroit for one (1) year *at the time of filing for office* . . . ." (Emphasis added.) Plaintiff argues, and the circuit court determined, that the emphasized language means that a candidate must be a registered voter one year prior to filing his or her papers for office, while Duggan argues that the phrase refers to the filing deadline applicable to all candidates. [*Barrow*, 301 Mich App at 413.]

In *Barrow*, this Court resolved a number of arguments, but pertinent to this matter, this Court agreed that § 2-101 uses the date of filing as the date from which the one-year period must

---

[2] Defendants have argued in this Court that the present appeal is moot, and also that it should be barred by laches. We do not believe that the appeal is moot. An appeal is moot if "some event occurs that renders it impossible for a reviewing court to grant relief." *BP7 v Bureau of State Lottery*, 231 Mich App 356, 359; 586 NW2d 117 (1998). While we ultimately do not agree with King on the merits, if we did, we could order meaningful relief (that votes for her be counted). Consequently, this appeal is not moot.

We decline to reach the laches issue in light of our decision on the merits.

be measured. So, when he filed his nominating petitions, Duggan had not been a registered voter in Detroit for at least one year. That meant that unless § 2-101 could not be enforced against him, Duggan was "ineligible to be placed on the ballot for mayor in the August 2013 primary." *Barrow*, 301 Mich App at 413-417. This Court then addressed and rejected constitutional arguments contesting enforcement of this Charter provision, and ultimately held that the plaintiff in that matter was entitled to a writ of mandamus directing that Duggan's name be removed from the primary ballot, as the trial court had held. *Id*. at 417-426.

*Barrow* is different from the present case in that, while Duggan was running for an at-large office (Mayor), in this case, King seeks to run for a non-at-large (i.e., district) office. With that in mind, the full text of § 2-101 provides:

> A person seeking elective office must be a citizen of the United States, a resident and a qualified and registered voter of the City of Detroit for one (1) year at the time of filing for office, and retain that status throughout their tenure in any such elective office. In addition, *any person seeking office from a non at-large district must be* a resident *and qualified, registered voter in such district for one (1) year at the time of filing for office*, and retain such status throughout their tenure." (emphasis added.)

King notably fails to explain how she satisfies this language given when she registered to vote in District 5. There is no doubt that, when she actually filed to run for Police Commissioner as a write-in candidate, she had not been a registered voter in District 5 for the requisite time. Even had she waited until the very last possible moment to declare her intent to run for this office, she could not meet the one-year voter-registration requirement. Indeed, she cannot meet that requirement until sometime next year, well after the election has passed. So, absent some reason why this provision is not enforceable against her, King is not eligible to be elected to the office she seeks in the upcoming election.

As she did in the trial court, King argues that this Charter provision conflicts with MCL 168.737a and that the statute must prevail. We disagree. MCL 168.737a(1) requires write-in candidates to file a declaration of intent, while MCL 168.737a(4) states the information that must be included in such a declaration: the candidate's name, the office sought, the candidate's residence address, and any other information "the secretary of state considers appropriate." There is no dispute that King completed the declaration, provided the required information, and filed it on time. According to King, this should be the "end of the inquiry," and defendants should be required to count any votes she may receive, and then also deem her elected to the office she seeks should she gain the most votes.

But that is not the end of the inquiry. As explained in *Barrow*, "Michigan statutory law provides that a city's charter governs qualifications for persons running for office, MCL 168.321(1)." *Barrow*, 301 Mich App at 413 (footnote omitted). And indeed, MCL 168.321(1) provides: "Except as provided in subsection (3) and sections 322, 327, 641, 642, 644e, 644f, 644g, and 646a, the qualifications, nomination, election, appointment, term of office, and removal from office of a city officer must be in accordance with the charter provisions governing the city." Notably, in the list of exceptions to this statute, MCL 168.737a is not mentioned. The reason is clear: MCL 168.737a does not set forth a list of qualifications to seek

office as a write-in candidate for local offices. It instead describes the process for declaring to run as a write-in candidate. In light of the plain language of MCL 168.321(1), there is no conflict between any statute and § 2-101 of the Charter. On the topic of qualifications to hold an office, and subject only to certain exceptions King never addresses, the Charter prevails. MCL 168.321(1); *Barrow*, 301 Mich App at 413.[3]

King asserts that she does comply with the *residency* requirements of §§ 2-101 and 3-111 of the Charter. Assuming, without deciding, that King is correct on that point, King still cannot satisfy the voter-registration requirement of § 2-101. It is that requirement, regardless of her residency, that dooms her candidacy.

King further asserts that she satisfies the residency requirement of § 7-802 of the Charter. That section provides:

> The Board of Police Commissioners has supervisory control and oversight of the Police Department as set forth in this Chapter. The Board of Police Commissioners is composed of eleven (11) members, seven of whom shall be elected from each non at-large district. Four (4) members of the Board shall be appointed by the Mayor, subject to the approval of the City Council. However, if the City Council does not disapprove an appointment within thirty (30) days, an appointment is confirmed. Appointed members shall serve a term of five (5) years, and not more than one (1) member's term expires each year. The Mayor shall not remove appointed members of the Board except for cause. Vacancies in positions held by appointed members shall be filled by the Mayor for the unexpired term, in the same manner as the initial appointment. *All members of the Board must be residents of the City.* [Detroit City Charter, § 7-802 (emphasis added).]

King relies on this final sentence and asserts that she complies that requirement, as she is a Detroit resident. But again, be that as it may, King still does not satisfy the voter-registration requirement of § 2-101 of the Charter.

Seemingly for the first time in her reply brief, King suggests that these two provisions conflict, and that with it being the more "specific" provision, § 7-802 prevails and provides the only residency requirement applicable to this office. We disagree. We could decline to consider this issue because raising issues for the first time in a reply brief is insufficient to preserve the issue for appeal. *Bronson Methodist Hosp v Mich Assigned Claims Facility*, 298 Mich App 192, 199; 826 NW2d 197 (2012). And while King asserted in her brief on appeal that she satisfies § 7-802, she did not argue in her brief on appeal that this provision conflicts with § 2-101, that § 7-802 is the more specific provision, and that it must control over § 2-101.

---

[3] It is true that the City Charter includes a provision stating that state law applies to elections. Detroit City Charter, § 3-106. But as explained, MCL 168.321(1) makes clear that when it comes to qualifications for local office, a City Charter controls. And notably, King's brief on appeal never once mentions or discusses MCL 168.321(1).

But regardless, we discern no conflict in these provisions. Section 7-802 mostly addresses those appointed to the Board of Police Commissioners by the Mayor, not those elected to the Board. But in any event, when read in context, it is clear that the mention of being a Detroit resident in that section of the Charter is to reinforce that all members serving on the Board, whether elected or appointed, must "be residents of the City." Detroit City Charter, § 7-802. It is not intended to set forth the sole qualification for holding that office.

On the other hand, § 2-101 provides qualifications that apply broadly to all candidates for elective office in Detroit. Those qualifications include residency and voter-registration requirements. This Charter provision also states that, "For any appointive city office, a person must be qualified to perform the duties of the office at the time of assuming the office and at all times while holding the office. The person's citizenship, residence and voter registration status shall be as required or permitted by this Charter or applicable law." Detroit City Charter, § 2-101. On the whole, it is apparent that § 2-101 is the Charter provision that is intended to set forth the qualifications for holding office in Detroit. Indeed, the title of this section is: "Qualifications for Elective Officers and Appointive Officers."

This Court's obligation is to harmonize all of these provisions whenever possible. *Wells Fargo Rail Corp v Dep't of Treasury*, 344 Mich App 351, 363; 1 NW3d 373 (2022). We discern no conflict between these Charter provisions. Section 7-802 reveals no intent to supersede or otherwise conflict with the requirements of § 2-101. Rather, anyone seated on the Board of Police Commissioners must be a Detroit resident pursuant § 7-802. And, as with other elective offices in Detroit, one seeking to be elected to that office must satisfy the requirements of § 2-101. There is no conflict between these Charter provisions.[4]

---

[4] In her reply brief, King cursorily suggests that the "mend the hold" doctrine of estoppel should prevent defendants from relying on the voter-registration issue at all given the initial focus of the DOE's decision (residency). But King then asserts that this Court "need not decide" that question. To the extent King does intend to raise this issue, we decline to consider it, as it has been raised for the first time in her reply brief. *Bronson Methodist Hosp*, 298 Mich App at 199.

We further note that in her complaint, King asserted that this Court's decision in *Barrow*, 301 Mich App 404, supported the proposition that §§ 2-101 and 3-111 of the Charter "do not apply to write-in candidates for City office." King does not raise such an argument in this Court. But we note that we are able to discern no such holding from *Barrow*. The issue in *Barrow* was whether Duggan's name should appear on the primary ballot. Duggan's candidacy as a write-in candidate was only mentioned in addressing his constitutional challenges, noting that Duggan "asserts he may be a write-in candidate under state law, citing MCL 168.737a . . . ." *Barrow*, 301 Mich App at 425. This Court did not decide whether Duggan could or could not declare to run as a write-in candidate, presumably because that specific question was not presented. It would also seem apparent that, while Duggan filed his petitions too early to appear on the ballot, he had time to declare his candidacy as a write-in candidate, at which time he would have satisfied the voter-registration requirement of § 2-101. In this case, King simply cannot meet the voter-registration requirement of § 2-101 in time to be elected to the office she seeks.

## IV.  CONCLUSION

We hold that King is ineligible to be elected to the office she seeks because she cannot satisfy the voter-registration requirement of Detroit City Charter, § 2-101.  Consequently, she is not entitled to a writ of mandamus compelling that any votes she may receive in the upcoming election be counted, nor is she entitled to declaratory relief to that effect.

Affirmed.  No costs, a public question being involved.  MCR 7.219(A).


/s/ Mark T. Boonstra
/s/ Michael J. Kelly
/s/ Michelle M. Rick