*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

WILLIAM LOUIS ROSIN,

                    Plaintiff-Appellee/Cross-Appellant,

v

LAURA MILLER ROSIN,

                    Defendant-Appellant/Cross-Appellee.

UNPUBLISHED
July 25, 2025
1:37 PM

No. 368739
Oakland Circuit Court
LC No. 2011-781648-DM

Before: MARIANI, P.J., and MURRAY and TREBILCOCK, JJ.

PER CURIAM.

In this appeal arising from post-divorce proceedings, defendant, Laura Rosin, appeals by right the trial court's November 1, 2023 order reducing the amount of monthly spousal support payable by plaintiff, William Rosin, and denying defendant's request for attorney fees under MCR 3.206(D).[1] Plaintiff cross-appeals the same order. We affirm.

## I. FACTUAL AND PROCEDURAL BACKGROUND

This case returns to this Court following a remand to the trial court in January 2023. See *Rosin v Rosin*, unpublished per curiam opinion of the Court of Appeals, issued January 19, 2023 (Docket Nos. 357142; 358764) *(Rosin I)*. This Court provided the underlying background of this case in its prior opinion, see *id*. at 1-4, but to summarize for purposes of this appeal: In January 2020, plaintiff, pursuant to the parties' settlement agreement incorporated into their 2011 consent

---

[1] Although this postjudgment order denying defendant's request for attorney fees under MCR 3.206(D) is a final order appealable by right, MCR 7.202(6)(a)(*iv*); MCR 7.203(A)(1), defendant's appeal from that order "is limited to the portion of the order with respect to which there is an appeal of right," MCR 7.203(A)(1). Thus, to the extent that we lack jurisdiction to consider as an appeal by right defendant's claim concerning the spousal support addressed in the same postjudgment order, in the interest of judicial economy, we exercise our discretion to treat defendant's claim of appeal regarding spousal support as a granted application for leave to appeal. See *Botsford Continuing Care Corp v Intelistaf Healthcare, Inc*, 292 Mich App 51, 61; 807 NW2d 354 (2011).

judgment of divorce, moved to terminate or alternatively reduce the amount of monthly spousal support he paid to defendant. At that time, plaintiff was paying defendant $6,500 a month, or $78,000 a year, in spousal support. *Id*. at 2. On December 3, 2020, following a six-day evidentiary hearing before a referee and the submission of the parties' written closing arguments, the referee issued a recommended order, in which she analyzed the factors from *Berger v Berger*, 277 Mich App 700, 726-727; 747 NW2d 336 (2008), and concluded that although termination of support was not equitable, a reduction "from $6,500 a month to $3,350 a month, retroactive to February 1, 2020," was. *Rosin I*, unpub op at 3. Defendant objected to that recommended order. *Id*. After reviewing the entire record de novo, the trial court issued an opinion and order adopting the referee's recommended order, finding that none of defendant's objections had any merit. *Id*.

Defendant subsequently appealed to this Court, arguing that the trial court erred by failing to award her attorney fees that she requested under MCR 3.206(D) and abused its discretion by reducing plaintiff's spousal support payments from $6,500 a month to $3,350 a month. *Id*. at 4-5. Regarding the attorney-fees issue, this Court held that defendant had preserved the issue below (albeit "barely") by including a request for attorney fees in her written closing argument, and the trial court erred by "fail[ing] to address this request." *Id*. at 4-5. Regarding the spousal-support issue, this Court concluded that the trial court's reduction of spousal support was an abuse of its discretion because the court had "failed to link its analysis of the [*Berger*] factors to the amount of the reduction." *Id*. at 5-6. This Court explained that the trial court had not "err[ed] in its consideration and application" of *Berger* factors 1 through 13, but it had failed to "provide an explanation of how the analysis of these factors linked to its reduction of spousal support . . . or why such a reduction was equitable" under the "general principles of equity" contemplated by *Berger* factor 14. *Id*. at 5-9. This Court also concluded that it was "inequitable to retroactively reduce the spousal support back to February 1, 2020," because the retroactive reduction was based on "defendant . . . making full-time wages," but "defendant did not obtain that full-time position until September 2020." *Id*. at 10. Accordingly, this Court "vacate[d] the trial court's reduction of spousal support and its order partially denying attorney fees" and remanded for the court to consider defendant's request for attorney fees under MCR 3.206(D) and to "explain how [the court's] reduction in spousal support is tied to its analysis of the *Berger* factors and how it is an equitable result." *Id*. at 5, 9-10.

On remand, defendant moved the trial court to, in relevant part, (1) permit supplemental briefing on the spousal-support issue, and (2) conduct an evidentiary hearing on the attorney-fees and spousal-support issues. The trial court denied defendant's request for an evidentiary hearing on the spousal-support issue because it did not believe that one was required to comply with this Court's directives on remand. Specifically, the court noted that approximately one week prior, the referee had issued an amended recommended order regarding the reduction in spousal support, in which the referee again recommended that spousal support be decreased from $6,500 to $3,350 a month. The amended recommended order was nearly identical to the 2020 recommended order, save some additional clarifying language throughout the discussion of *Berger* factors 1 through 13, as well as additional analysis under *Berger* factor 14 as directed by this Court. Defendant thereafter objected to the referee's amended recommended order and requested de novo review by the trial court. Defendant also, pursuant to an order from the trial court, submitted a brief in support of her request for attorney fees under MCR 3.206(D).

After receiving the referee's amended recommended order and the parties' written and oral arguments on both issues, the trial court again reviewed the entire record de novo "to address the specific issues before it on remand." In its written opinion and order, the trial court adopted the additional analysis included in the referee's amended recommended order regarding spousal support and similarly concluded that a reduction in spousal support from $6,500 to $3,350 a month was equitable given the circumstances of the case. The court also denied defendant's request for attorney fees under MCR 3.206(D). The instant appeal and cross-appeal followed.

## II. COMPLIANCE WITH THIS COURT'S DIRECTIVES IN *ROSIN I*

On appeal, defendant first argues the trial court failed to comply with this Court's directives in *Rosin I* on remand. "When an appellate court remands a case with specific instructions, it is improper for a lower court to exceed the scope of the order." *Int'l Business Machines, Corp v Dep't of Treasury*, 316 Mich App 346, 350; 891 NW2d 880 (2016) (quotation marks and citations omitted). Indeed, "[i]t is the duty of the lower court or tribunal, on remand, to comply strictly with the mandate of the appellate court" when the appellate court "gives clear instructions in its remand order[.]" *Glenn v TPI Petroleum, Inc*, 305 Mich App 698, 703; 854 NW2d 509 (2014) (quotation marks and citation omitted). "Whether a trial court followed an appellate court's ruling on remand is a question of law that this Court reviews de novo." *Schumacher v Dep't of Natural Resources*, 275 Mich App 121, 127; 737 NW2d 782 (2007).

As noted, when this Court vacated the trial court's prior order and remanded for further proceedings, this Court specifically instructed the court to consider the request for attorney fees under MCR 3.206(D) that defendant had included in her written closing argument and to "explain how [the court's] reduction in spousal support is tied to its analysis of the *Berger* factors and how it is an equitable result," including "any retroactive application" of that support. *Rosin I*, unpub op at 5, 9-10. The trial court reiterated these directives in its written opinion and order on remand and, contrary to defendant's assertions on appeal, thoroughly addressed each of the issues on remand as directed.

Regarding the attorney-fees issue, the trial court duly explained why it believed that defendant was not entitled the requested fees under MCR 3.206(D). Specifically, the court explained that defendant was required by MCR 3.206(D)(2)(a) to sufficiently show that she "is unable to bear the expense of the action . . . and that [plaintiff wa]s able to pay," but when defendant made this request, she provided no "testimony as to her actual [attorney] fees, no documents related to any request for fees, no testimony or evidence to show she was unable to pay her fees, or any evidence to show that [p]laintiff was able to pay [her] fees." The court then cited to caselaw and to specific portions of the record to further support its conclusion.

Regarding the spousal-support issue, the trial court, in accordance with this Court's directive, expressly clarified how its reduction in support connected to its analysis of the *Berger* factors and why that reduction was equitable in light of that analysis. The court noted that this Court, in *Rosin I*, had "found that the Referee's analysis as to [*Berger*] Factors 1-13 were supported by the record and were without error," and the court determined that, "[b]ased on its de novo review of the record . . . , the downward modification of spousal support [from $6,500 to $3,350] is equitable based on [plaintiff's] decrease in earnings, [defendant's] present income, and [defendant's] failure to timely obtain appropriate employment." The court also clarified the

reasoning behind the amount of its reduction in support, from $6,500 to $3,350 a month, adopting, after the court's own de novo review of the record, the explanation provided by the referee in the amended recommended order:

> [Defendant's] support should be lowered by one half of the percentage of [plaintiff's] decrease in income, which is an average of 9.86% (decrease from $6,500 per month to $5,859 per month) and further lowered by her income of $30,096 per year or $2,508 per month based on her hourly wage of $18.81 per hour for 40 hours per week for 40 weeks per school year (decrease from $5,859 per month to $3,350 per month).

And regarding the retroactive modification of spousal support, the trial court noted that this Court concluded the retroactive modification of the support to February 1, 2020, was inequitable given that defendant did not begin working a full-time job until September 2020, so the court ordered "that the modification be retroactively applied to September 1, 2020, when [defendant] first began working full-time."

The record makes clear that the trial court complied on remand with this Court's specific directives in *Rosin I*, *id*. at 5, 9-10, and we see no reversible error in that regard, see *Glenn*, 305 Mich App at 703.[2]

## III. SPOUSAL SUPPORT

Next, defendant challenges the trial court's reduction in spousal support on multiple grounds. And plaintiff, on cross-appeal, challenges the trial court's decision to make its reduction of spousal support retroactive to September 1, 2020, rather than February 1, 2020. We address each parties' arguments in turn.

## A. DEFENDANT'S CHALLENGES ON APPEAL

Defendant first argues that the trial court abused its discretion by reducing spousal support from $6,500 to $3,350 a month because it clearly erred by finding that such a reduction was equitable in light of the circumstances of this case. We review a trial court's decision regarding spousal support for an abuse of discretion, but we review the court's findings of fact regarding spousal support for clear error. *Loutts v Loutts*, 298 Mich App 21, 25-26; 826 NW2d 152 (2012). "An abuse of discretion occurs when the trial court's decision falls outside the range of reasonable and principled outcomes," and "[a] finding is clearly erroneous if, after reviewing the entire record, we are left with the definite and firm conviction that a mistake was made." *Id*. at 26 (quotation marks and citation omitted). Because a trial court is best positioned to weigh evidence and assess

---

[2] Defendant also briefly argues that the trial court adopted a "dollar to dollar reduction in spousal support" in violation of the principles outlined in *Myland v Myland*, 290 Mich App 691, 695-696; 804 NW2d 124 (2010), but contrary to *Myland*, *id*., the trial court in this case clearly contemplated the *Berger* factors and general principles of equity when calculating the reduction of spousal support, and it did so at this Court's express direction.

a witness's credibility, we afford great deference to those determinations. *Berger*, 277 Mich App at 705. "If the trial court's findings are not clearly erroneous," the trial court's discretionary dispositional ruling regarding spousal support must be affirmed "unless we are convinced that it was inequitable." *Loutts*, 298 Mich App at 26.

The primary objective of spousal support "is to balance the incomes and needs of the parties in a way that will not impoverish either party," and the court must base spousal support "on what is just and reasonable under the circumstances of the case." *Smith v Smith*, 328 Mich App 279, 286; 936 NW2d 716 (2019) (quotation marks and citation omitted). MCL 552.28 authorizes the modification of an award of spousal support and states that "[o]n petition of either party, after a judgment for alimony . . . , the court may revise and alter the judgment, respecting the amount or payment of the alimony . . . and may make any judgment respecting any of the matters that the court might have made in the original action."

For a court to modify spousal support, the moving party must first "establish new facts or changed circumstances arising since the prior order regarding support was issued." *Luckow Estate v Luckow*, 291 Mich App 417, 424; 805 NW2d 453 (2011). Once the court finds that the moving party "has established a change in circumstances, it must then make factual findings from which to conclude whether the [spousal support] should be modified and, if so, by what amount." *Id.* (quotation marks and citation omitted). When making this determination, a trial court should consider "many factors," *id.*, including:

> (1) the past relations and conduct of the parties, (2) the length of the marriage, (3) the abilities of the parties to work, (4) the source and amount of property awarded to the parties, (5) the parties' ages, (6) the abilities of the parties to pay alimony, (7) the present situation of the parties, (8) the needs of the parties, (9) the parties' health, (10) the prior standard of living of the parties and whether either is responsible for the support of others, (11) contributions of the parties to the joint estate, (12) a party's fault in causing the divorce, (13) the effect of cohabitation on a party's financial status, and (14) general principles of equity. [*Berger*, 277 Mich App at 726-727 (quotation marks and citation omitted).]

"The trial court should make specific factual findings regarding the factors that are relevant to the particular case." *Korth v Korth*, 256 Mich App 286, 289; 662 NW2d 111 (2003).

As previously determined in *Rosin I*, "the threshold inquiry of whether there was a change in circumstances was satisfied through the parties' stipulation." *Rosin I*, unpub op at 6. The parties do not dispute this. Accordingly, our focus is on the second step of the inquiry, i.e., the trial court's analysis of the *Berger* factors when determining whether spousal support should be modified and, if so, by what amount. See *Luckow*, 291 Mich App at 424.

Our focus is further narrowed, however, by this Court's prior determinations in *Rosin I*. As the trial court noted on remand, this Court concluded that the trial court's prior findings and analyses regarding *Berger* factors 1 through 13 were not clearly erroneous and instead took issue with the court's treatment of *Berger* factor 14 and general principles of equity. *Rosin I*, unpub op at 6-10. This Court emphasized that "[t]he amount of the reduction, though significant, [wa]s not the problem," and that "an explanation tying the factor analysis to the amount of the reduction"

may well exist, but absent "such an explanation" on the record, it was "left with a firm conviction that the reduction in spousal support . . . [wa]s not equitable." *Id*. at 9.

As discussed, the trial court duly tailored its spousal-support analysis to the scope of these prior determinations and the corresponding remand order. And despite defendant's attempt to now relitigate all 14 *Berger* factors in this appeal, the law-of-the-case doctrine applies and defendant has failed to show any grounds that would justify disregarding it.[3] Accordingly, our focus is on the general principles of equity contemplated by *Berger* factor 14 and whether the trial court sufficiently explained how its reduction of spousal support was equitable in light of its existing analysis of the *Berger* factors.[4]

In reviewing *Berger* factor 14 and general principles of equity, we see no reversible error in the trial court's conclusion that a reduction in spousal support from $6,500 to $3,350 a month was equitable given the circumstances of this case. As discussed, the trial court supplemented its findings under the *Berger* factors and provided additional explanation as to why its reduction was equitable and how it obtained the specific reduced amount that it did. The court agreed with the referee's amended findings regarding *Berger* factor 14, which determined that "it was unreasonable to terminate spousal support" because the evidence established that defendant was "clearly still in need of some monetary support," but it was also "inequitable for [plaintiff] to continue paying at the same rate" that he was previously. Following a de novo review of the record, the court found that the reduction, both in fact and in amount, was equitable based on plaintiff's decreased income, defendant's "present income," and defendant's "failure to timely

---

[3] As this Court has explained, "a conclusion that a prior appellate decision was erroneous is not sufficient in itself to justify ignoring the law of the case doctrine." *Grace v Grace*, 253 Mich App 357, 363; 655 NW2d 595 (2002). Instead, the doctrine is to be followed except under limited circumstances, such as when (1) there is a material change in the facts of the case; (2) there is an intervening change in the law, *Duncan v Michigan*, 300 Mich App 176, 188-189; 832 NW2d 761 (2013); (3) there is a significant competing interest at stake, such as a constitutional right, requiring independent review, *Locricchio v Evening News Ass'n*, 438 Mich 84, 109-110; 476 NW2d 112 (1991); or (4) the court believes that "its prior decision is clearly erroneous" and would result in "a manifest injustice" if left intact, *Rott v Rott*, 508 Mich 274, 288; 972 NW2d 789 (2021) (quotation marks and citation omitted). Defendant has not explained, and we do not see, how any such circumstances might be present here, so as to warrant disregarding this Court's prior determinations regarding *Berger* factors 1 through 13.

[4] We note that, while the referee made certain additions to her prior analysis of *Berger* factors 1 through 13 in the amended recommended order, they were minimal and did not substantively change the findings for any of those factors. Instead, they served as clarifying language to further supplement the analysis of *Berger* factor 14 and to better connect the entire analysis to the recommended reduction of spousal support, as directed by this Court in *Rosin I*. To the extent that any of the additions may have substantively changed the findings for any of the *Berger* factors 1 through 13 themselves, however, those findings were amply supported by the record and not clearly erroneous. See *Loutts*, 298 Mich App at 25-26.

-6-

obtain appropriate employment," noting that defendant's "delayed [search] for employment for the first two years post-divorce" and her "narrowed her job search to only the most affluent school districts in the area" was "not reasonable and prevented her from obtaining employment sooner."

Consistent with these findings, the record reflects that plaintiff's income had steadily decreased from $474,142 in 2011 to $362,487 in 2019, and he reasonably expected it to decrease further in 2020 given the COVID-19 pandemic. Regarding defendant's employment, there is no dispute that defendant opted not to work for the first few years following the divorce to focus on personal growth and did not begin seeking any form of employment until 2014. As a result, defendant had no steady income outside of spousal support between 2011 and 2016. Defendant also testified that when she began seeking employment, she restricted her applications for schoolteacher positions to certain grade levels and to what she described as "crem de la crem [sic] [school] districts," and she did not apply to other positions outside of these grade levels and school districts, despite being qualified for them. Defendant testified that she eventually obtained full-time employment teaching four-year-old students at a preschool in Bloomfield Hills in 2017, where she made approximately $12,519 in 2017 and $22,527 in 2018, but her annual salary had decreased to $15,931 in 2019 after decreased enrollment at the school. Testimony also established that defendant had voluntarily decreased her employment from full-time to part-time in 2019 and had refused full-time employment offers to teach three-year-old students at the preschool's alternate location. Testimony further established that defendant did not widen her application pool until after the evidentiary hearing on plaintiff's motion to terminate or modify spousal support began, and she eventually obtained full-time employment in September 2020, where she made approximately $30,000 annually. In light of this record evidence, the trial court's factual findings on remand were not clearly erroneous, and we are not convinced that its discretionary reduction of spousal support was inequitable. See *Loutts*, 298 Mich App at 26.

Defendant also argues that the trial court's award of spousal support on remand is inherently faulty and therefore must be vacated because it was largely based on the referee's amended recommended order. Specifically, defendant argues that because MCL 552.507(2)(a) does not allow a referee to "[h]ear . . . motions pertaining to an increase or decrease in spouse support," the referee lacked statutory authority to provide the amended recommended order regarding spousal support. It was not until after the referee issued an amended recommended order on remand, however, that defendant took any issue with the referee's role in these proceedings. Defendant was notified by the trial court in March 2020 that it had referred plaintiff's motion to the referee. The referee then conducted a six-day evidentiary hearing on the matter between July and October 2020 and issued a recommended order in December 2020. The trial court then conducted a de novo review of the record, and defendant eventually appealed to this Court. At no point during these lengthy prior proceedings did defendant raise any alleged error by the trial court for assigning the issue of spousal support to a referee, and defendant concedes as much on appeal. Defendant's failure to raise this issue earlier undermines her ability to now claim error based upon it. See *Walters v Nadell*, 481 Mich 377, 387; 751 NW2d 431 (2008) (noting that Michigan

"follows the 'raise or waive' rule of appellate review" and that "a 'failure to timely raise an issue waives review of that issue on appeal' ") (citations omitted).[5]

Regardless, defendant fails to show, and we fail to see, how any such error was not harmless. See MCR 2.613(A). Defendant was afforded a six-day evidentiary hearing to present all relevant evidence and arguments related to the spousal-support issue, during which she vigorously participated. The referee conducted the evidentiary hearing and provided recommended orders containing findings of fact, but did not purport to do anything further, such as resolving any purely legal questions or issuing a final decision in lieu of the trial court. See, e.g., *Rose v May*, ___ Mich App ___, ___; ___ NW3d ___ (2025) (Docket No. 371605); slip op at 7 (explaining that the duties contemplated by the Friend of the Court Act (FCA), MCL 552.501 *et seq.*, generally "involve . . . the investigation and compilation of facts for use by the circuit court judge") (quotation marks and citation omitted); *D'Allessandro v Ely*, 173 Mich App 788, 800; 434 NW2d 662 (1988) (holding that the friend of the court is "limited to its fact-finding, investigative functions and that purely legal questions [are] left to the circuit court judges").[6] And the trial court, for its part, did not simply adopt the referee's recommended order or amended recommended order; rather, in each instance, the trial court received and considered defendant's objections and completed a de novo review of the entire record before reaching its conclusion. See MCL 552.507(4)-(6); MCR 3.215(E)(4) and (F); see also *D'Allessandro*, 173 Mich App at 800 (concluding that the error in a referee deciding a purely legal question was harmless given the trial court's subsequent de novo consideration). Defendant has not shown entitlement to relief on this issue.

Lastly, defendant argues that she was denied her due-process right to notice and an opportunity to be heard because the trial court did not conduct an evidentiary hearing or allow supplemental briefing on remand before deciding the spousal-support issue. We do not see merit in this claim. As noted above, defendant received a six-day evidentiary hearing addressing spousal

---

[5] Defendant argues that no waiver of this issue could have occurred, relying heavily on *Allard v Allard (On Remand)*, 318 Mich App 583, 601; 899 NW2d 420 (2017). In *Allard*, this Court concluded that the parties to a divorce could not, "by mutual agreement, strip a circuit court of its authority under MCL 552.23(1) to order relief that the court, in its sound discretion, deems necessary to adequately support and maintain the parties' minor children." *Id*. at 602. In support, this Court explained that "the parties to a divorce cannot, through antenuptial agreement, compel a court of equity to order a property settlement that is *in*equitable" or "relieve a circuit court of its duty to independently safeguard the interests of minor children who are involved." *Id*. at 601. We fail to see how *Allard*'s reasoning or conclusion sheds any meaningful light on the circumstances presented by this case, and whether defendant's failure to object to the referee's role with respect to the spousal-support issue until after remand waived her ability to now challenge it on appeal. And in any event, as discussed *infra*, defendant has not shown entitlement to relief for any such error, regardless of waiver.

[6] "Although cases decided before November 1, 1990 are not binding precedent, they nevertheless can be considered persuasive authority[.]" *In re Stillwell Trust*, 299 Mich App 289, 299 n 1; 829 NW2d 353 (2012) (citations omitted).

support in which she fully participated, and she was afforded the opportunity to submit written closing arguments. Defendant was also undisputedly notified of this Court's remand to the trial court for further consideration of the spousal-support issue in *Rosin I*, and she both received notice of the referee's amended recommended order and was permitted to object to it. After receiving defendant's written objections and oral arguments at a hearing, the court reviewed the entire record de novo, and then issued a written opinion and order addressing the spousal-support issue. It is thus clear from the record that defendant was afforded ample notice and opportunity to be heard regarding that issue, including on remand, and defendant has failed to show how she was nonetheless denied her constitutional right to due process as to it. See, e.g., *Cummings v Wayne Co*, 210 Mich App 249, 253-254; 533 NW2d 13 (1995).[7]

## B. PLAINTIFF'S CHALLENGE ON CROSS-APPEAL

Plaintiff argues on cross-appeal that the trial court erred by retroactively reducing the spousal support to September 1, 2020, rather than to February 1, 2020. According to plaintiff, it is inequitable to require him to pay full spousal support between those dates because the evidence establishes defendant was voluntarily underemployed during that time. This Court directly addressed the retroactive modification of the spousal support in *Rosin I*, concluding that "it was . . . inequitable to retroactively reduce the spousal support back to February 1, 2020," because the reduction was largely based on defendant's full-time salary of "nearly $30,000 a year," but "defendant did not obtain that full-time employment until September 2020." *Rosin I*, unpub op at 10. This Court acknowledged that "the trial court had discretion under MCL 552.603(2) to make a modification of spousal support retroactive," but it concluded that "imposing that reduction retroactively to a time when defendant was not working full time is unnecessarily and inherently unfair." *Id*. The trial court acknowledged this Court's holding in *Rosin I* in its written opinion and order on remand, ordering that, for the reasons set forth by this Court in *Rosin I*, the spousal-support modification was to be "retroactively applied to September 1, 2020, when [defendant] first began working full-time."

As noted, the law-of-the-case doctrine dictates that, absent limited circumstances, both the trial court on remand and this Court in this subsequent appeal are bound by this Court's prior determination of this issue in *Rosin I*. See, e.g., *Rott v Rott*, 508 Mich 274, 286-288; 972 NW2d 789 (2021). Although plaintiff clearly disagrees with that prior determination, plaintiff has offered, and we see, no colorable basis for disregarding the law-of-the-case doctrine here. See *id.* at 284; *Locricchio v Evening News Ass'n*, 438 Mich 84, 109-110; 476 NW2d 112 (1991); *Duncan v Michigan*, 300 Mich App 176, 188-189; 832 NW2d 761 (2013); *Grace v Grace*, 253 Mich App 357, 363; 655 NW2d 595 (2002). Accordingly, we remain bound by this Court's prior

---

[7] Defendant also argues, in her reply brief on appeal, that the trial court's failure to hold an evidentiary hearing on her attorney-fees request amounted to a due-process violation. Defendant, however, failed to raise this argument in her principal brief on appeal, rendering it not properly presented for review. See, e.g., *Bronson Methodist Hosp v Mich Assigned Claims Facility*, 298 Mich App 192, 199; 826 NW2d 197 (2012). Nor is the argument particularly developed, and we fail to see how it might fare any better than the one above regarding spousal support.

determination regarding the retroactive application of the spousal-support modification, and see no reversible error in the trial court's handling of that issue on remand.

## IV. ATTORNEY FEES AND COSTS

Lastly, defendant argues the trial court abused its discretion by holding she was not entitled to attorney fees under MCR 3.206(D). We review a trial court's decision concerning attorney fees for an abuse of discretion, but we review its underlying findings of fact for clear error. *Richards v Richards*, 310 Mich App 683, 699-700; 874 NW2d 704 (2015). Statutory interpretation and interpretation of our court rules are questions of law that we review de novo. *Barretta v Zhitkov*, 348 Mich App 539, 549; 19 NW3d 420 (2023).

Although attorney fees are not recoverable by right in divorce actions, they are authorized by statute, MCL 552.13(1), and court rule, MCR 3.206(D). *Reed v Reed*, 265 Mich App 131, 164; 693 NW2d 825 (2005). Pursuant to MCR 3.206(D)(1) and (2)(a), when a party cannot afford the attorney fees and expenses related to a case or proceeding, he or she may request that the court order the opposing party to pay some or all of those fees and expenses. "This Court has interpreted this rule to require an award of attorney fees in a divorce action only as necessary to enable a party to prosecute or defend a suit." *Myland v Myland*, 290 Mich App 691, 702; 804 NW2d 124 (2010) (quotation marks and citation omitted). If a party requests attorney fees and expenses under MCR 3.206(D)(2)(a), he or she must put forth "facts sufficient to show that he or she is unable to bear the expense of the action, and that the other party is able to pay." *Colen v Colen*, 331 Mich App 295, 306; 952 NW2d 558 (2020) (quotation marks and citation omitted).

As noted, in *Rosin I*, this Court concluded that the trial court should have considered the request for attorney fees that defendant had previously raised, and remanded "to the trial court for consideration of that request." *Rosin I*, unpub op at 5. On remand, the trial court, after explaining why it had not considered the request previously, concluded that the prior request was inadequate because defendant had "failed to submit sufficient testimony or evidence that an award of attorney fees under [the court rule] would be appropriate." The court explained:

> Defendant did not present any testimony as to her actual fees, no documents related to any request for fees, no testimony or evidence to show she was unable to pay her fees, or any evidence to show that Plaintiff was able to pay Defendant's fees. Indeed, Defendant testified that she elected to take several years off work following the divorce to focus on personal growth and yoga and spent considerable funds on annual beauty treatments, house cleaners and travel, while purchasing a home in an affluent neighborhood.

Accordingly, the trial court denied defendant's request for attorney fees under MCR 3.206(D).

We see no clear error in the trial court's findings. Although defendant estimated her attorney fees to be over $50,000 at the time of the September 2020 evidentiary hearing, she provided no evidence at that time of what the exact amount in fees and expenses was or whether she had been asked to pay any of them at that point. And, as for the parties' respective abilities to pay, defendant relied almost exclusively on the fact that plaintiff's annual income was much higher than hers; she otherwise put forth no forth no proofs regarding plaintiff's ability to pay. There was

undisputedly a substantial difference in the parties' incomes—defendant's annual salary was approximately $30,000 a year and plaintiff's annual salary was over $350,000. While that disparity may certainly be relevant to the inquiry, defendant failed to provide support, legally or factually, for the notion that it was sufficient in itself to demonstrate the parties' respective abilities to pay defendant's attorney fees in this case. See, e.g., *Colen*, 331 Mich App at 309 (noting that "[t]he essence of plaintiff's argument is that she has fewer financial resources than defendant, but the standard for awarding attorney fees under MCR 3.206(D)(2)(a) is more complex than that").

Additionally, as the trial court recognized, the record before the court contained evidence and testimony undermining defendant's claimed inability to pay. As discussed previously, testimony established that, although defendant expressed concern about her finances, she had chosen not to take full advantage of her income-earning potential for a number of years following the divorce, and only widened her employment search after the evidentiary hearing in the instant matter was underway. Defendant also was solely responsible for her mortgage payment, but she opted to purchase a $379,000 home in an affluent neighborhood. And defendant admitted to having sufficient funds to cover her necessities and still spend several thousand dollars per year on things such as vacations, a housecleaner, Botox, pedicures, cosmetics, blowouts, and hair treatments. Defendant has not shown clear error in any of the trial court's findings in this regard.

On remand, defendant submitted additional evidence in support of her fee request, which documented the parties' respective incomes and the actual fees she had incurred. As discussed, however, she failed to provide such evidence when she initially made her request pre-remand, and so its post-remand submission does not betray any error in the court's assessment of the request's adequacy at the time it was made. In any event, while this evidence helped to fill certain gaps in defendant's proofs, it did not meaningfully address the evidentiary deficiencies discussed above regarding the parties' respective abilities to pay.[8]

As noted, our review of the trial court's decision regarding defendant's fee request is limited. We review the court's factual findings for clear error, which requires "a definite and firm conviction that a mistake has been made." *Richards*, 310 Mich App at 700 (quotation marks and citation omitted). The trial court's findings as to this issue do not leave us with any such definite and firm conviction. And we review the court's ultimate decision on the fee request for an abuse of discretion, which only "occurs when the result falls outside the range of principled outcomes." *Id.* at 699. As our Supreme Court recently reiterated:

> At its core, an abuse of discretion standard acknowledges that there will be circumstances in which there will be no single correct outcome; rather, there will be more than one reasonable and principled outcome. When the trial court selects one of these principled outcomes, the trial court has not abused its discretion and, thus, it is proper for the reviewing court to defer to the trial court's judgment.

---

[8] In addition, the evidence defendant submitted on remand indicated that defendant had already paid the requested fees. Defendant stated in her verified brief that she "was forced to borrow money from family" to do so and "ha[d] been unable to repay said loans to date," but she did not provide further details to that effect through either her brief or supporting documentation.

> [*Webster v Osguthorpe*, ___ Mich ___; ___ NW3d ___ (2025) (Docket Nos. 166627; 166628); slip op at 19, quoting *People v Babcock*, 469 Mich 247, 269; 666 NW2d 231 (2003) (ellipsis omitted).]

Accordingly, to secure relief, defendant must do more than simply show that an award of fees in her favor would have been a reasonable and principled outcome; she must show that the court's decision to deny her request was outside the range of such outcomes. See, e.g., *Webster*, ___ Mich at ___; slip op at 19 ("Merely because a denial of sanctions may have been supportable does not mean that the trial court abused its discretion by allowing sanctions."). For the reasons discussed above, she has not done so. The trial court's findings regarding this issue were not clearly erroneous, and the court did not abuse its discretion by denying defendant's request for attorney fees under MCR 3.206(D).[9]

Affirmed.

/s/ Philip P. Mariani
/s/ Christopher M. Murray
/s/ Christopher M. Trebilcock

---

[9] Defendant also argues the trial court erred by concluding the attorney-fees issue was not properly presented in 2020, but because the trial court complied with this Court's directive in *Rosin I* by expressly considering on remand the merits of whether defendant was entitled to attorney fees under MCR 3.206(D), this issue is moot, and we decline to substantively address it. See *Barretta*, 348 Mich App at 561-562 (noting that this Court "will generally not review moot issues" because doing so "would be a purposeless proceeding") (quotation marks and citations omitted).