*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

ALLIE T. MALLAD,

Plaintiff-Appellant/Cross-Appellee,

v

LEFTY'S HOLDINGS, LLC, LEFTY'S
CHEESESTEAKS FRANCHISING, LLC, NAYFE
BERRY, SAM HUSSEIN BERRY, and SHADY
ABULHASSAN,

Defendants-Appellees/Cross-
Appellants.

UNPUBLISHED
October 10, 2025
9:49 AM

No. 368913
Wayne Circuit Court
LC No. 23-001832-CB

Before: MARIANI, P.J., and MURRAY and TREBILCOCK, JJ.

PER CURIAM.

Plaintiff, Allie Mallad, appeals the trial court's order compelling arbitration, staying enforcement of the order for 21 days, and denying without prejudice a motion to rescind the agreements between the parties. Defendants, Lefty's Holdings, LLC (Lefty's); Lefty's Cheesesteaks Franchising, LLC (Lefty's Cheesesteaks); Nayfe Berry; Hussein "Sam" Berry; and Shady Abulhassan, cross-appeal the same order.[1] We affirm in part, reverse in part, and remand for further proceedings.

Nayfe was the sole owner of Lefty's, which owned Lefty's Cheesesteaks. Plaintiff was the majority owner of Red Effect Holdings, LLC (Red Effect). In April 2020, Nayfe owned 11 Lefty's Cheesesteaks restaurants in Michigan, but did not have a franchise system in place. Although Nayfe owned the restaurants, she did not have any substantive involvement in the operations, management, or control of them. Sam was authorized to negotiate and speak on behalf of Nayfe regarding Lefty's Cheesesteaks. Nayfe wanted plaintiff's assistance to complete the conversion

---

[1] Nayfe Berry and Hussein "Sam" Berry are mother and son. For ease and clarity, we will refer to them individually by their first names, and collectively as the Berrys.

-1-

of Lefty's Cheesesteaks into a franchisor-franchisee business model and to grow Lefty's nationwide. Nayfe and plaintiff memorialized their agreement on April 17, 2020, in two separate agreements: the master agreement and the operating agreement.

In the master agreement, plaintiff agreed to grant Nayfe a 5% membership interest in Red Effect in exchange for 20% of Nayfe's membership interest in Lefty's. The master agreement also provided for other matters related to this exchange, such as the payment of certain commissions and the division of credit card processing rebates, and included a forum-selection provision for disputes arising from or related to the master agreement. The operating agreement governed the future conduct of Lefty's and its members, Nayfe and plaintiff, and provided for the regulation and management of Lefty's business affairs. The operating agreement also contained an agreement to arbitrate any disputes arising out of or relating to the operating agreement.

After a breakdown in the relationship, plaintiff filed a complaint against defendants alleging claims of member oppression; breach of contract; unjust enrichment; an accounting of Lefty's assets and liabilities, with removal of Nayfe as Lefty's manager; statutory conversion or embezzlement; breach of fiduciary duty; civil conspiracy; and tortious interference with contractual relationships and/or business expectancies. In lieu of an answer, defendants moved to compel arbitration, relying on the agreement to arbitrate in the operating agreement, and the Berrys also subsequently filed a motion to rescind the parties' agreements on the basis of fraud in the inducement, failure of consideration, and breach of contract. The trial court granted defendants' motion to compel arbitration and denied without prejudice the Berrys' motion to rescind. The court's order also provided that enforcement with respect to arbitration was stayed for 21 days, and that "[t]his is a final order and closes the case."

This appeal and cross-appeal followed. On appeal, plaintiff argues the trial court erred by granting defendants' motion to arbitrate and by staying arbitration for only 21 days (rather than until the instant appeal is complete). On cross-appeal, defendants argue the trial court erred by dismissing the case rather than staying it pending arbitration, and by denying the Berrys' motion to rescind.[2]

---

[2] Additionally, defendants filed motions with this Court for peremptory reversal, to dismiss plaintiff's appeal, and for immediate consideration. Plaintiff responded to defendants' motions and separately moved for a stay of arbitration pending appeal. This Court entered an order granting immediate consideration of defendants' motions to dismiss and for peremptory reversal, denying the motions to dismiss and for peremptory reversal, and granting the motion to stay arbitration while the instant appeal is pending. *Mallad v Lefty's Holdings, LLC*, unpublished order of the Court of Appeals, entered February 1, 2024 (Docket No. 368913). This Court's order granting a stay pending appeal renders moot plaintiff's challenge to the trial court's failure to do the same, and so we will not address that challenge further.

## I. STAY

We start with defendants' claim on cross-appeal that the trial court, upon granting their motion to compel arbitration, erred by purporting to dismiss the case rather than staying it pending completion of arbitration. We agree.

We review a trial court's interpretation and application of statutes and court rules de novo. *Estes v Titus*, 481 Mich 573, 578-579; 751 NW2d 493 (2008). MCL 691.1683 states that the Michigan Uniform Arbitration Act (UAA), MCL 691.1681 *et seq.*, "governs an agreement to arbitrate whenever made" after July 1, 2013. The parties entered into the operating agreement, which contains the relevant arbitration provision, on April 17, 2020. Therefore, the UAA governs the parties' agreement to arbitrate. Section 7 of the UAA, MCL 691.1687, pertains to motions to compel or stay arbitration and provides, in subsection (7):

> If the court orders arbitration, the court on just terms shall stay any judicial proceeding that involves a claim subject to the arbitration. If a claim subject to the arbitration is severable, the court may limit the stay to that claim.

Similarly, MCR 3.602(C) provides that

> an action or proceeding involving an issue subject to arbitration must be stayed if an order for arbitration or motion for such an order has been made under this rule. If a motion for an order compelling arbitration is made in the action or proceeding in which the issue is raised, an order for arbitration must include a stay.

These subsections required the trial court "to stay the judicial proceedings as it relate[s] to any claim subject to arbitration." *Legacy Custom Builders, Inc v Rogers*, 345 Mich App 514, 528; 8 NW3d 207 (2023). When the trial court concluded that plaintiff's claims were subject to arbitration and ordered arbitration, it should have stayed those claims pending arbitration.[3]

## II. ARBITRATION

We turn next to plaintiff's challenge to the trial court's decision to grant defendants' motion to compel arbitration. Plaintiff's challenge centers on the interaction between the operating

---

[3] Relatedly, defendants argue that, because the UAA required the trial court to stay the case, the court lacked the authority to enter a "final order" that "closes the case," as it purported to do—which, in turn, means that plaintiff's appeal is not from a "final order" and this Court lacks jurisdiction to consider it. Defendants therefore maintain that the appeal should be dismissed. While it is clear that the trial court erred by entering the order as it did, it is also clear from the record that the court (albeit erroneously) intended the order to be, and treated it as operating as, a final order. Regardless, to the extent plaintiff lacked an appeal by right from that order, we exercise our discretion to treat plaintiff's appeal as an application for leave to appeal, grant the application, and address its claims on their merits. See, e.g., *Wardell v Hincka*, 297 Mich App 127, 133 n 1; 822 NW2d 278 (2012); *Botsford Continuing Care Corp v Intelistaf Healthcare, Inc*, 292 Mich App 51, 61; 807 NW2d 354 (2011).

agreement's arbitration provision and the master agreement's forum-selection provision. According to plaintiff, the master agreement's forum-selection provision controls over the operating agreement's arbitration provision, and the trial court erred by concluding otherwise. We disagree, in part. The trial court did not err by concluding that the arbitration provision in the operating agreement remained effective and applicable to the instant dispute; the court, however, erred to the extent it determined that the entire dispute as pleaded by plaintiff is subject to arbitration.

Orders regarding motions to compel arbitration are reviewed de novo. *Altobelli v Hartmann*, 499 Mich 284, 294-295; 884 NW2d 537 (2016). So too is the question of whether a particular issue is subject to arbitration. *In re Nestorovski Estate*, 283 Mich App 177, 184; 769 NW2d 720 (2009). The interpretation of contractual language is also reviewed de novo. *Morley v Auto Club of Michigan*, 458 Mich 459, 465; 581 NW2d 237 (1998).

"Arbitration is a matter of contract." *Altobelli*, 499 Mich at 295 (quotation marks and citation omitted). "Accordingly, when interpreting an arbitration agreement, we apply the same legal principles that govern contract interpretation." *Id*. "Our goal in interpreting a contract is to ascertain the intent of the parties at the time they entered into the agreement." *Lichon v Morse*, 507 Mich 424, 437; 968 NW2d 461 (2021) (quotation marks and citation omitted). "[W]e determine [this intent] by examining the language of the agreement according to its plain and ordinary meaning." *Altobelli*, 499 Mich at 295.

"When contractual language is unambiguous, courts must interpret and enforce the language as written because an unambiguous contract reflects, as a matter of law, the parties' intent." *Harper Woods Retirees Ass'n v Harper Woods*, 312 Mich App 500, 508; 879 NW2d 897 (2015). "A contract is unambiguous, even if inartfully worded or clumsily arranged, when it fairly admits of but one interpretation." *McCoig Materials, LLC v Galui Constr, Inc*, 295 Mich App 684, 694; 818 NW2d 410 (2012). "Every word, phrase, and clause in a contract must be given effect, and contract interpretation that would render any part of the contract surplusage or nugatory must be avoided." *Id*.

In this case, neither party argues that the contractual provisions at issue are ambiguous, nor do we see any reason to conclude as much. Instead, the parties argue that the relevant provisions unambiguously support their respective positions. The parties focus on three provisions from the master and operating agreements. First is the master agreement's forum-selection provision, which provides, in relevant part:

> Each Party irrevocably and unconditionally agrees that it shall not commence any action, litigation or proceeding of any kind whatsoever against the other Party in any way arising from or relating to this Agreement, including all exhibits, schedules, attachments and appendices attached hereto and thereto, and all contemplated transactions, including contract, equity, tort, fraud and statutory claims, in any forum other than the state or federal courts sitting [in] Wayne County in the State of Michigan. Each Party irrevocably and unconditionally submits to the exclusive subject matter and personal jurisdiction of such courts and agrees to bring any such action, litigation or proceeding only in the same. . . .

The master agreement does not provide for arbitration.

Second is the operating agreement's arbitration provision, which provides, in relevant part:

Any controversy, claim or dispute arising out of or relating to this Agreement or a breach of this Agreement shall be settled by arbitration in Southfield, Michigan in accordance with the Commercial Arbitration Rules of the American Arbitration Association, and judgment upon the award rendered by the arbitrator may be entered in any court having jurisdiction thereof, pursuant to applicable law. . . . Notwithstanding the foregoing, a Party may file a claim for equitable or injunctive relief in the appropriate Michigan court while the arbitration is pending, but in all events the issue of damages (which are limited pursuant to Section 7) shall be decided in arbitration.  The parties consent to the jurisdiction of the above arbitration forum and hereby irrevocably submit to the non-exclusive jurisdiction of any federal or state court sitting in Wayne County, Michigan over any matter, pursuant to such Arbitration rules, which may be submitted to such a court for interpretation or enforcement. . . .

And third is the following provision in the operating agreement, which pertains to that agreement's interaction with the master agreement:

The terms of the Master Agreement are incorporated, as applicable.  Where any terms conflict between this agreement and the Master Agreement, the Master Agreement shall control.

The master agreement's forum-selection provision thus clearly requires that the parties bring "any action, litigation or proceeding of any kind whatsoever against the other Party in any way arising from or relating to" the master agreement only in "the state or federal courts sitting in Wayne County in the State of Michigan."  And the operating agreement's arbitration provision clearly provides for arbitration of "[a]ny controversy, claim or dispute arising out of or relating to" the operating agreement or a breach of the operating agreement.  Plaintiff argues that these two directives are conflicting, and the operating agreement makes clear that, in the event of such a conflict, the forum-selection provision in the master agreement controls—meaning that the instant dispute is not subject to arbitration.

We, like the trial court, fail to see such a conflict.  Taken together, the forum-selection and arbitration provisions make clear that (1) judicial proceedings, as to both the operating and master agreements, must be brought in the state or federal courts in Wayne County; and (2) claims that are related to or arise out of the operating agreement are subject to the arbitration provision, whereas all other claims are not.  This reading duly aligns with and gives effect to the plain language of both provisions, and we see nothing to indicate that the parties, in agreeing to these provisions, intended otherwise.  See *Lichon*, 507 Mich at 437; *Altobelli*, 499 Mich at 295.  And this case has proceeded consistently with these provisions: plaintiff commenced the instant suit in Wayne Circuit Court, and defendants then moved to invoke the arbitration provision on the basis that plaintiff's claims arose out of or related to the operating agreement.

-5-

The trial court agreed with defendants that plaintiff's claims pertained to the operating agreement and—except as discussed below—plaintiff does not, on appeal, meaningfully challenge the claim-by-claim particulars of that conclusion. Instead, plaintiff broadly maintains that all claims pertaining to the operating agreement necessarily "aris[e] from or relat[e] to" the master agreement because the operating agreement is, in the words of the forum-selection provision, a "contemplated transaction" of the master agreement. In support, plaintiff points to the fact that, as part of the agreement to assign to plaintiff a membership interest in Lefty's—which was the subject of the master agreement—plaintiff was required, at closing, to sign the operating agreement. Plaintiff, however, did not raise this interpretive argument below. See *Tolas Oil & Gas Exploration Co v Bach Srvs & Mfg, LLC*, 347 Mich App 280, 289; 14 NW3d 472 (2023) (explaining that, under the "raise or waive" rule of appellate review for civil cases, "the party asserting error . . . must show that the same basis for the error claimed on appeal was brought to the trial court's attention" and "[i]f a litigant does not raise an issue in the trial court, this Court has no obligation to consider [it]").

Nor do we see particular merit in this argument. At most, it perhaps shows that plaintiff's signing of the operating agreement was a "contemplated transaction" of the master agreement. These contractual terms do not, in our view, demonstrate an intent that every future dispute that might arise between the parties about the performance of the operating agreement would be governed only by the master agreement's forum-selection provision, to the exclusion of the arbitration provision that the parties expressly and specifically agreed would apply to such disputes. See *Lichon*, 507 Mich at 437; *Altobelli*, 499 Mich at 295; *McCoig Materials*, 295 Mich App at 694. Accordingly, we see no error in the trial court's rejection of plaintiff's offered interpretation of the agreements.[4]

Plaintiff argues, in the alternative, that the trial court erred by ordering defendants Sam and Abulhassan to arbitration because neither was a party to the operating agreement. We agree, in part. As our Supreme Court had made clear, "A party cannot be required to arbitrate an issue which it has not agreed to submit to arbitration." *Lichon*, 507 Mich at 437. Sam was a signatory

---

[4] For the first time on appeal, plaintiff also contends that, by filing and arguing a motion to rescind the operating and master agreements, defendants acted inconsistently with their right to arbitrate and thus waived that right. While, at the trial level, plaintiff generally stated that rescission and arbitration were inconsistent, plaintiff did not argue that the motion for arbitration was waived by virtue of the filing of the motion for rescission. Thus, appellate review of this argument has itself been waived. See *Tolas Oil*, 347 Mich App at 289. Furthermore, all of the authority plaintiff cites in support of this argument involves parties who extensively litigated the merits of the claims at issue before the trial court. See *Madison Dist Pub Sch v Myers*, 247 Mich App 583, 596-600; 637 NW2d 526 (2001); *Salesin v State Farm Fire & Cas Co*, 229 Mich App 346; 581 NW2d 781 (1998); *Joba Const Co v Monroe County Drain Commissioner*, 150 Mich App 173, 179; 388 NW2d 251 (1986). Here, by contrast, defendants did no such thing before they invoked their right to arbitrate and the Berrys then also sought rescission in the alternative. While, as discussed *infra*, we see no reversible error in the trial court's decision to deny the motion to rescind without prejudice, plaintiff has failed to show that the Berrys' mere filing of that motion waived the right to arbitrate that defendants had already (and properly) invoked.

to the operating agreement, but under the heading of "accepted by the officers . . . [a]s to the applicable parts"; the agreement did not expressly specify whether its arbitration provision was one such "applicable part[]." Abulhassan, for his part, was designated in the operating agreement as an individual to whom notices under the agreement must be sent, but he did not sign the agreement in any capacity. And while, at the hearing on the motion to compel arbitration, the trial court obtained an oral stipulation to arbitrate the instant dispute from Sam's and Abulhassan's counsel, it did not likewise obtain such a stipulation from plaintiff.

That said, our Supreme Court has also made clear that "agency principles apply in determining who is included within the scope of [an] arbitration clause." *Altobelli*, 499 Mich at 299. Here, Nayfe was a signatory to the operating agreement—both in her own capacity as a member of Lefty's, and on behalf of Lefty's itself. And throughout his complaint, plaintiff expressly alleges his claims against Sam and Abulhassan as agents of Lefty's. Accordingly, we fail to see why those claims against Sam and Abulhassan would not be subject to arbitration, regardless of whether plaintiff agreed to arbitrate disputes with them individually.

By the same token, however, Count VIII of plaintiff's complaint brought a claim against Abulhassan individually for tortious interference with contractual relationships and/or business expectancies. As stated in the complaint, this claim was "plead[ed] in the alternative to the extent Defendant Shady Abulhassan argues and/or this Court finds that he was not an employee and/or authorized officer, executive, and/or agent of the Company." Given that Abulhassan did not sign the operating agreement and this claim does not arise from his alleged status as Lefty's agent, plaintiff did not agree to submit this claim to arbitration and it is not subject the operating agreement's arbitration provision. See *Lichon*, 507 Mich at 437. Accordingly, we agree with plaintiff that the trial court erred to the extent that it ordered this claim to arbitration.[5]

## III. RESCISSION

Lastly, defendants argue that the trial court erred by denying without prejudice the Berrys' motion to rescind the parties' agreements because the trial court was required to resolve the merits of that motion before it could reach their motion to arbitrate. We disagree.

To start, while the Berrys argued the substantive merits of rescission below, at no point did they meaningfully address the basis for the trial court's decision to deny their motion, which tracked plaintiff's arguments in response to the motion and concluded, in essence, that the motion was procedurally defective and premature. Nor did the Berrys advance the argument, as they now seek to do on cross-appeal, that the trial court was legally required to resolve their rescission motion on its merits before reaching their motion to arbitrate. Instead, the Berrys replied to plaintiff's procedural arguments by simply brushing them aside for failing to "provide a

---

[5] This determination, in turn, implicates the UAA's requirement of a stay pending arbitration. As noted, MCL 691.1687(7) provides that the trial court must stay arbitrable claims and, in its discretion, may either stay the entire action or stay only the arbitrable claims. Accordingly, it will be for the trial court to determine on remand whether Count VIII of plaintiff's complaint should be stayed pending the completion of arbitration.

-7-

substantive answer" to the rescission motion. And when, at the motion hearing, the trial court expressed its inclination to agree with plaintiff that the motion was a "waste of time" given its procedural deficiencies, the Berrys' counsel continued to offer nothing of substance in response, attempting to shift blame to plaintiff's counsel for "wast[ing] the time" and stating that, while he believed "as a matter of law we're entitled to" rescission, "that's a time for a different motion" and "[t]hat's fine, I understand the Court's position." As a result, defendants cannot now argue for the first time on appeal that their motion was procedurally sound, or that the trial court erred by concluding otherwise or by failing to dispose of the motion on its merits prior to resolving the motion to arbitrate. See *Tolas Oil*, 347 Mich App at 289.

Even looking past these waiver issues, defendants' arguments on appeal do not demonstrate reversible error in the trial court's decision to dismiss the motion to rescind without prejudice. While defendants now style the motion to rescind as a motion for summary disposition under MCR 2.116(C), the motion itself never said as much or even identified the court rule under which it was brought. And even now, in their brief on appeal, defendants merely cite MCR 2.116(C) broadly, without identifying the subrule that provides the basis for their claim of relief. Relatedly, defendants have never attempted to tie their substantive arguments to any such basis or to the substantive standards governing the provision of relief thereunder. See MCR 2.119(A)(1)(b) (providing that "a motion must . . . state with particularity the grounds and authority on which it is based").

Similarly, defendants have shown no reversible error in the trial court's decision not to reach the merits of the rescission motion before resolving the motion to arbitrate. Defendants point to the UAA, but we see nothing in it that would have required the court to decide the Berrys' rescission motion on its merits despite the motion's procedural deficiencies, or to wait for the Berrys to cure those deficiencies, before the court could resolve defendants' motion to arbitrate. And consistent with the court's decision to dismiss that motion without prejudice while granting the motion to arbitrate, the UAA does not purport to foreclose the filing and consideration of a motion to rescind after arbitration has been ordered. Cf. MCL 691.1686(4) ("If a party to a judicial proceeding challenges the existence of, or claims that a controversy is not subject to, an agreement to arbitrate, the arbitration proceeding may continue pending final resolution of the issue by the court, unless the court otherwise orders."). Defendants have failed to show that the trial court erred by declining to reach the merits of the motion to rescind in this case or that we should disrupt the court's decision to dismiss that motion without prejudice.[6]

Affirmed in part, reversed in part, and remanded for further proceedings consistent with this opinion. We do not retain jurisdiction.

/s/ Philip P. Mariani
/s/ Christopher M. Murray
/s/ Christopher M. Trebilcock

---

[6] Defendants also request that this Court reach the merits of the motion for rescission. As doing so is unnecessary to the proper disposition of their cross-appeal, we decline.